DUNN, imp., Respondent, vs. CITY OF SUPERIOR, Appellant. SAKRISON and others, imp., Appellants, vs. CITY OF SUPERIOR, Respondent.

*February 21—March 12, 1912.*

*Municipal corporations: Street improvements: Special assessments: Appeal, when lies: Relief granted: Mistake of fact: Extension of time for payment: Waiver of objections: Right to withdraw application: Election between remedies: Estoppel.*

1. In proceedings to pave a street under ch. 539, Laws of 1909 (secs. 959—30a to 959—30j, Stats.), a property owner need not appear before the board of public works or the city council and make objections to the assessment in order to entitle him to appeal from the final determination of the council, pursuant to sec. 959—30g.

2. By ch. 539, Laws of 1909, creating secs. 959—30$a$ to 959—30$j$, Stats., the new sections are virtually made a part of sec. 959—30, Stats. (Supp. 1906), being addenda thereto; and the provisions of said sec. 959—30 and of sec. 959—31, Stats. (1898), relating to extension of the time for payment of assessments for street improvements, apply to improvements made under said new sections.

3. The remedy of the property owner by appeal from the determination of the council, under sec. 959—30$g$, Stats. (Laws of 1909, ch. 539), being exclusive, the court in such cases will grant either equitable or legal relief or both, as the case may require.

4. Equity will ordinarily relieve against a mere mistake of fact where no laches is shown and the other party has not materially changed his position relative to the subject matter.

5. The option given the property owner by sec. 959—31, Stats. (1898), to have the time for payment of his assessment extended upon condition that he waive any illegality or irregularity in such assessment, was within the province of the legislature to grant or withhold, and such condition is valid.

6. The privilege granted upon such condition is analogous to the right of an election between inconsistent remedies, and a property owner having once applied for an extension and waived all objections to the assessment cannot afterwards withdraw such application and waiver.

7. The fact that he did not know, at the time of applying for an extension, that his property had previously been assessed for street paving or that the cost of such previous paving had not been credited in making the new assessment, does not entitle him to relief, since the statute gives him thirty days for investigation.

8. Waiver is the voluntary relinquishment of a known right. In this case plaintiffs voluntarily relinquished the right to contest the assessment, knowing that they had such right, though not knowing the facts which would make such a contest successful.

9. The city having determined to accept extensions, is bound to accept all applications therefor which are legally made, and no action on its part to show acceptance is necessary to render them effective.

10. In cases within the statute the privilege of the extension is an adequate consideration for the waiver required, and the doctrine of estoppel, which would bar a withdrawal of the application only in case the city had materially altered its situation relative to the matter, is therefore not applicable.

BARNES, J., dissents.

Appeals from a judgment of the circuit court for Douglas county: Frank A. Ross, Circuit Judge.   *Affirmed.*

Plaintiffs owned certain lots abutting on Hughitt avenue in the city of *Superior,* purchased by them in 1909, and on which they have resided since the purchase thereof.   In 1892 Hughitt avenue was paved, and the lots in question paid more than $2 per square yard for such paving.   In 1910 proceedings under ch. 539, Laws of 1909, were instituted to repave the avenue.   Certain defects in these proceedings are claimed by plaintiffs, which are not necessary to be set out.   On May 25, 1910, and June 11, 1910, a resolution of the board of public works was published in the official paper of the city, which resolution gave the owner or owners of any lots assessed for benefits on account of the repaving of Hughitt avenue the option and the right, at any time within thirty days after the passage and publication of the resolution, to apply for an extension of the time of payment of the assessment for benefits. In the latter part of June, 1910, the plaintiffs *Edward Sakrison, Alexander Grant,* and *John A. Landgren,* respectively, presented to the board of public works of the city of *Superior* a request, in writing, for an extension of the time of payment of the assessment of benefits which, conformably to sec. 959—31, Stats. (1898), contained the following clause:

"I agree that in consideration of the privilege granted by such resolution to make no objection to any want of power, illegality, or irregularity in regard to the assessment against my property."

A similar written request was made by O. E. Dunn, the husband of the plaintiff *Jessie B. Dunn,* and presented to the board of public works, but the same was signed and presented without the authority, knowledge, or consent of the plaintiff *Jessie B. Dunn.*   On June 30, 1910, *Edward Sakrison* signed and sent to the board of public works of the city of *Superior* a letter, as follows:

"Gentlemen: Some time ago I signed application praying for an extension of payment on the Hughitt avenue pavement.

The same was presented to you through the Geo. G. Newton Co., of your city.    I wish to withdraw said petition and ask that it be set aside and that you make the same null and void."

This letter was received by the board on or about July 5, 1911.    The plaintiffs *Alexander Grant* and *John A. Landgren,* respectively, on June 28, 1910, signed and presented to the mayor and common council a notice requesting that they be permitted to withdraw their petition for the extension of the time of payment for such assessment.    On October 21, 1911, the plaintiffs *Sakrison, Grant,* and *Landgren* signed and caused to be served upon the chairman of the board of public works, and also exhibited to another member of said board, a notice, duly signed, which contained a description of their property, and a formal withdrawal and cancellation of their former request for an extension of the time of payment of said assessment.    They had no information or knowledge that the property, or any part thereof, had been assessed or had paid any part of the cost of the pavement of said Hughitt avenue in the year 1892, or at any other time prior to the making of the assessment for the paving of 1910, and none of said plaintiffs had any knowledge or information that the assessment for the pavement of 1910 had been made upon their property without giving credit or deducting the amount previously paid for assessments thereon, and they had no knowledge or information on that subject until the time immediately preceding the taking of their appeal.    None of the proceedings in the making of the assessments, benefits, or cost of the work upon the plaintiffs', or any of the plaintiffs', property showed upon their face or otherwise anything regarding the assessment previously paid for the pavement of 1892 or whether any such deduction had been made.    They were, however, aware of the fact that Hughitt avenue, opposite their lots, had been previously paved with cedar blocks, and they also knew that the work of repaving was carried on in 1910.

None of the plaintiffs appeared before the board of public works or before the common council of the city of *Superior* and made objection to the assessment made by said board of public works or to the confirmation thereof by the common council, and never in any manner made objection to such assessment before said board of public works or the said common council at or prior to the time when the same was confirmed by said common council.    The board of public works took no action upon the requests of the plaintiffs for an extension of the time of payment of the special assessment or upon the petitions for the withdrawal of such requests. Neither did the board of public works take any action with reference to issuing any bonds against the lots of the plaintiffs or any of them.    On the 24th day of October, 1911, John Erickson, the city comptroller, countersigned and issued bonds against the plaintiffs' property, and each of them, and delivered the same to the contractor on October 25, 1911.

The plaintiffs appealed to the circuit court, pursuant to sec. 959—30*g*, Stats. (Laws of 1909, ch. 539), from the final determination of the common council of the defendant city as to the assessment for benefits.

From a judgment entered in the circuit court in favor of the plaintiff *Jessie B. Dunn,* the city of *Superior* appealed; and the plaintiffs *Sakrison, Grant,* and *Landgren* appealed from a judgment entered in favor of the defendant.

For the plaintiffs there was a brief by *Luse, Powell & Luse,* and oral argument by *L. K. Luse.*    They cited, *inter alia, Covington v. Schlosser,* 141 Ky. 838, 133 S. W. 987; *Kenny v. Kelly,* 113 Cal. 364, 45 Pac. 699; *Lewis v. Cook,* 57 Wash. 1, 106 Pac. 198; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *Swedish Am. Nat. Bank v. Koebernick,* 136 Wis. 473, 117 N. W. 1020; *Belknap v. Bender,* 75 N. Y. 446; *Smith v. Burns B. & M. Co.* 132 Wis. 177, 111 N. W. 1123; *Ripley v. Ætna Ins. Co.* 30 N. Y. 136; *Jorgenson v. Superior,* 111 Wis. 561, 87 N. W. 565.

For the defendant there was a brief by *R. I. Tipton,* city attorney, and *T. L. McIntosh,* assistant city attorney, and oral argument by *Mr. Tipton.*

VINJE, J.   The appeal of the city of *Superior* presents but one question not heretofore determined in the case of *Newton v. Superior,* 146 Wis. 308, 130 N. W. 242, 131 N. W. 986, and that is: Must a property owner, in proceedings to grade a street under ch. 539, Laws of 1909 (sec. 959—30*a* to sec. 959—30*j,* Stats.), appear before the board of public works or the city council and make objections in order to entitle him to appeal pursuant to sec. 959—30*g,* Stats.?   We think not.   There is nothing in the appeal statute that requires any appearance by the property owner at any stage of the proceedings in order to entitle him to appeal.   It says:

"If the owner of any parcel of land affected by such determination of the council feels himself aggrieved thereby, he may within twenty days after the date of the first publication of such notice of final determination appeal therefrom to the circuit court."

No conditions whatever are by the statute attached to the right to appeal, and the court can make none.   Moreover, it is clear from the proceedings to be had that a property owner may not know until the council has made its final determination pursuant to subd. 8, sec. 959—30*f,* whether or not he is aggrieved.   Said section provides that "the council may determine the amount to be paid by the real estate as benefits on account of such improvement of such street or alley, and the amount that shall be paid by the city at large or the ward funds or the wards in which such improvement is made."   Until the council makes such final determination the property owner cannot know what he is required to pay.   The city or the wards may be required to pay all.   It would be idle to require him to object before the objection could attach to anything determined, even provisionally.   The cases cited by

counsel for the city, bearing upon this question, relate to entirely different statutory or charter provisions, and nothing would be gained by distinguishing them from the case at bar. Our own statute is plain and must govern. The appeal given by it is the only remedy the property owner has. *Newton v. Superior,* 146 Wis. 308, 130 N. W. 242, 131 N. W. 986. Such exclusive remedy should not be burdened by any conditions not clearly expressed or implied by the terms of the act granting it.

On plaintiffs' appeal two questions present themselves for determination: First, Do sec. 959—30, Stats. (Supp. 1906), and sec. 959—31, Stats. (1898), relating to the extension of the time of payment of the assessment, apply to improvements made under ch. 539, Laws of 1909 ? and, second, If so, could the plaintiffs withdraw their requests for an extension of the time of payment of the assessment after making an application therefor to the board of public works as provided by sec. 959—31, Stats. (1898) ?

Ch. 539, Laws of 1909, in terms creates secs. 959—30a to 959—30j, Stats., inclusive. By such creation they are made a part of sec. 959—30, Stats. (Supp. 1906), being addenda thereto. The legislative intent is clear that ch. 539 was meant to become part and parcel of the subject of "Street Improvements" dealt with in secs. 959—30 to 959—34, Stats. These sections as they now stand include the new sections created. The language of sec. 959—30 (Supp. 1906) is broad in its scope and provides generally that whenever in any city the repaving of any avenue with a permanent paving having concrete foundation shall have been duly authorized, the board of public works may determine that any owner of a lot that is asssessed may have the option to apply for an extension. It would be a forced construction to hold that the legislature did not intend the provisions of this section to apply to an improvement made under ch. 539, Laws of 1909, when such chapter was in terms embodied into the statute of which

sec. 959—30 is a part. We are satisfied such was not the legislative intent, and conclude that the board of public works properly held the section applicable to street improvements. made under ch. 539 of the Laws of 1909.

The answer to the second question presented is not so clear. There is much force in the argument that the city had in nowise changed its relation to the subject matter when the withdrawals were attempted to be made. The contractor was not interested in the question of the right of withdrawal, for he had assumed the contract with the express proviso that any or all of the lotowners might extend the time of payment. If they did so extend, he received the bonds; if not, the cash when collected. He had agreed to take either. So it narrows down to a question between the city and the lotowner.. The trial court found that plaintiffs did not, at the time they made application for an extension, know that their property had paid its full share of street improvements for paving, and they made prompt efforts to withdraw their application. as soon as they learned the true facts. The remedy by appeal being exclusive, the court will grant either equitable or legal relief, or both, as each case may require. And ordinarily equity will relieve against a mere mistake of fact where no laches is shown and the other party has not materially changed his position relative to the subject matter. We have here, however, a case where a city is engaged in making important street improvements, in which many proceedings must be timely had by it. The statute (sec. 959—31) gives the option to the property owner to have the time of the payment of his assessment extended upon the express condition, to be embodied in his application as an agreement, that "in consideration of the privilege granted by such resolution [of extension] the applicant will make no objection to any want of power, illegality or irregularity in regard to the assessment. against his property." It was within the province of the legislature to grant or withhold the privilege of such an option..

*Weise v. Green Bay,* 143 Wis. 198, 126 N. W. 681.    That being so, it could attach such conditions to the exercise thereof by the lotowner as it deemed proper.    No doubt the legislature considered that when it gave lotowners a period of thirty days in which to determine whether or not they would apply for an extension, it gave them ample time to inquire into the regularity of the proceedings and to ascertain whether or not their property was subject to the assessment.    Having given adequate time for such investigation, it no doubt also considered that it was reasonable to require them to waive all want of power and any irregularity or illegality as a condition precedent to their enjoying the right of an extension.    No lack of knowledge of such waiver can be claimed, for it is expressly embodied in the signed application.    So each lotowner was put to the election of accepting the benefits of an extension and waiving all want of power to make the assessment, or any irregularity therein, or to reject the privilege of extension and retain the right to question both the power to assess and the regularity or legality of the assessment. The privilege granted upon such conditions must be deemed analogous to the right of an election between inconsistent remedies, which when once exercised cannot be withdrawn or changed.    True, the city in the instant case may not have materially altered its situation relative to the subject matter between the time of the making of the application and the attempted withdrawal thereof.    But were it held that such application, once made, could be withdrawn, it would seriously hamper cities in the subsequent steps to be taken, for they could never know on what property to issue bonds if the applications were subject to withdrawal.

But it is said the city took no action upon the applications before the requests for withdrawal were made.    No action by the city was necessary.    It had no power to accept or reject the applications at its own pleasure.    It had to accept.    When properly made, the applications became contracts or agree-

ments between the lotowners and the city by force of the statute. The city could determine whether or not it would permit extensions at all. But having determined that it would, it was bound to accept all applications that were legally made. It could exercise no discretion as to that, and hence no action on its part to show an acceptance of the applications was necessary. Nothing remained for it to do but to issue bonds on all lots covered by applications made in accordance with the statute.

It is deemed that the privilege of extension is an adequate consideration for the waiver required by the statute, and it expressly makes such privilege the consideration, for it says: "In consideration of the privilege granted by such resolution the applicant will make no objection," etc. The doctrine of estoppel, therefore, is not applicable to the case. The express waiver provided for by statute controls. A waiver has properly been defined to be "the intentional relinquishment of a known right." *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *Swedish Am. Nat. Bank v. Koebernick,* 136 Wis. 473, 479, 117 N. W. 1020. When the plaintiffs presented their applications to the city for an extension they intentionally and voluntarily relinquished the known right to contest the validity of the assessment either because of want of power to make it or because of any irregularity or illegality therein, after having been given a reasonable time in which to investigate their rights relative thereto and ascertain what the facts were upon which they might in whole or in part defeat the assessment. It is true they did not at that time know the facts relative to their ability to successfully contest the assessment, but they did know they had a right to contest it, and they did know that they waived such right by applying for an extension. So they intentionally relinquished a known right, though in ignorance of the *quantum* of proof they could produce to sustain it. They cannot now, however, successfully plead their failure to investigate and

discover the true facts relative to the liability of their property to pay the assessment before making the waiver, because they should have made such investigation within the thirty days given them by the law for that purpose. Not having made it then, they are bound by the election made. The result is the case must be affirmed on both appeals.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). I think the judgment should be reversed on the appeal of the plaintiffs *Sakrison, Grant,* and *Landgren.* I am unable to convince myself that they received any consideration for signing the request which they made. Before signing they owed the city nothing presently or prospectively and were under no obligation to pay any part of the unlawful assessment. It would seem that the only consideration which they received was in the shape of a good-sized obligation to pay something which they neither owed nor should be called upon to pay. This does not comport with my idea of a consideration. To be sure, the latter might consist of a detriment or loss to the city, but the city is wholly unable to show where it is any worse off in a single particular because of the request. The request was made in ignorance of the fact that the property of the plaintiffs was exempt from the special assessment made, and was promptly withdrawn when discovered. It seems to me that to make a party the victim of an innocent and excusable mistake which has harmed no one, and to compel him to pay a very considerable sum of money which he did not owe, because of it, to one who is admittedly neither legally nor equitably entitled thereto and whose only right is based on the fact that a mistake was made, is a rather harsh rule. It is proper enough to hold parties responsible for their mistakes when others have thereby been misled to their detriment. But I do not think we should be so intolerant of them as to permit others to be enriched because of them, where they were wholly unaffected by what was mistakenly done.

Neither do I think that there is any analogy between the doctrine of election of remedies and the situation in the present case. The matter of election as to which of two or more inconsistent remedies will be pursued presupposes that the different remedies exist. Here, under the supposition on their part that they were obliged to pay the assessment in a lump sum if they did not request that it be extended over a series of years, plaintiffs chose the latter alternative. They elected to pay what they supposed was a debt in instalments instead of in a lump sum. Inasmuch as they owed nothing, it would be hardly fair to say that they elected to make a donation.