# No. 12,425.

## MILLER *v*. CITY AND COUNTY OF DENVER ET AL.
### (5 P. [2d] 875)

Decided November 16, 1931.  Rehearing denied December 7, 1931.

Mr. John R. Adams, for plaintiff in error.

Mr. Thomas H. Gibson, Mr. James D. Parriott, Mr. Frank L. Hays, for defendants in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

This writ of error is prosecuted by Victor Arthur Miller to review a judgment against him in his suit against the City and County of Denver and its treasurer, Clem W. Collins, to remove from Miller's title to certain lots in Country Club Place in Denver a cloud created, it is claimed, by a special assessment for street paving.

The plaintiff contends that the assessment is void for the following reasons: (1) That there was no petition for the improvement; (2) that the manager of improvements and parks exercised legislative power, which power was not granted to him by the Denver Charter; (3) that the notice of the hearing prior to the passage of the assessing ordinance was jurisdictionally defective; and (4) that there was a noncompletion of the paving ordered by the ordinance. Of these in their order. In this opinion charter sections are given the numbers appearing in the Municipal Code of 1927.

■ 1. Absence of petition.

Section 22 of the charter provides that "except on petition, no paving district shall include more than twelve (12) blocks of street, with intersections." The paving district in question was created without a petition; hence if it included more than twelve blocks of street, its creation violated the charter and invalidated the proceeding.

The controversy is over the status of that part of First avenue that runs between two strips of ground not

platted into residence blocks and lots. Exclusive of the part in question, the paving district included only eleven blocks of street. The part of the avenue in question consists of 536 feet lying between Vine street to the west and York street to the east. First avenue runs east and west. For many miles in each direction, with the exception of the strip in question, abutting land is platted into blocks and lots. For many miles to the north and south nearly all the land is similarly platted. Abutting the avenue on the north, commencing at Race street and extending east 145 feet, the land is platted into blocks and lots. East of that to York street, a distance of 536 feet, the land on both sides of the avenue is unplatted. This is the strip in controversy.

The plaintiff contends that a district exceeds twelve blocks of street whenever it has eleven street blocks and in addition thereto one of the streets goes into land that is unplatted on both sides. We find nothing in the charter or in the authorities to support such a contention as applied to the situation here presented.

But, says the plaintiff, even if that contention cannot be sustained, that strip, according to "normal" platting, would constitute two street blocks, making a total of thirteen in the district. But long blocks are characteristic of that neighborhood. In Country Club Place, and in Park Club Place adjoining it to the west, each block extends from First avenue to Third avenue, Second avenue being entirely excluded from the plats. Thus, the very block in which the plaintiff's lots lie (block 8, Country Club Place) is 600 feet long. And the length of the unplatted strip in question (536 feet) is due to the fact that at the time covered by the proceeding there was no Gaylord street between Vine and York streets in that neighborhood. We are of the opinion that the municipal authorities were justified in treating First avenue between Vine and York streets as one street block.

We hold that the paving district in question did not include more than twelve street blocks, and therefore that

the creation of the district was not illegal for want of a petition.

■ 2. Powers of manager of improvements and parks.

Many pages of the plaintiff's brief are devoted to this subject. The real objection seems to be that in the proceeding culminating in the levy of the assessment the manager usurped legislative power.

Section 14 of the charter vests in the manager full charge and control of the department of improvements and parks, which department is given the powers previously vested in the board of public works and the commissioner of improvements. The procedure followed in the present case was as follows: By resolution the council requested the manager to pave the streets. The mayor joined in the request. Pursuant to such request, the manager ordered the creation of the district, and caused the city engineer to make a map of the district and an estimate of cost of the improvement, etc. Charter, §22. The engineer's report was made and was adopted by the manager. The manager caused the publication of a notice, giving property owners an opportunity to object to the creation of the district and the making of the proposed improvements. *Id.* After the expiration of the time for filing objections, the manager, pursuant to section 22, submitted to the council and the mayor the form of a bill for an ordinance creating and establishing the district and authorizing the paving, and recommended its passage by the council and its approval by the mayor. The ordinance was passed and approved. Acting under the same section, the clerk of the city and county caused the publication of a notice of the completion of the paving, apportioning the cost thereof, and setting a time within which objections may be filed for consideration by the council, sitting as a board of equalization. After the expiration of the time for filing objections, the assessing ordinance was passed by the council and approved by the mayor. Thereupon, the manager

prepared the assessment roll and certified the same to the manager of revenue for collection.

From the foregoing it will be seen that no act of the manager was in the exercise of legislative power. That power was exercised by the council.

■ 3. Notice of hearing.

Section 30 of the charter provides that upon the completion of the improvement the manager shall prepare a statement showing the cost, and "apportioning the same upon each lot or tract of land to be assessed for the same." Section 31 provides that the clerk shall publish a notice that the improvement has been completed and accepted, specifying the total cost and the share apportioned to each lot or tract of land, and stating "that any complaints or objections that may be made in writing by such owners or persons * * * and filed with the clerk within sixty (60) days from the first publication of such notice, will be heard and determined by the board of supervisors [council] at its first regular meeting after said sixty (60) days and before the passage of any ordinance assessing the cost of said improvements."

The first publication of the notice in question was on *February 28,* 1927. The notice stated, among other things, that complaints or objections made in writing and filed on or before *April 28,* 1927, would be heard and determined by the council at its first regular meeting, or any adjournment thereof, after April 28, 1927. It will be seen that the notice did not give the full time prescribed by the charter. Property owners were entitled to the full time, to enable them to investigate and to determine whether or not to object, and, if they concluded to object, to formulate and file their objections. When they adopted the charter, the people declared that sixty days' time should be given, and it is not within the power of a court, much less of a ministerial officer, to substantially shorten the time so prescribed.

In *Keese v. Denver,* 10 Colo. 112, 116, 15 Pac. 825, 827, we said: "The grants of powers to make local assess-

ments are strictly construed, and must be strictly followed. * * * Every material requirement of the charter must be strictly complied with before there can be any liability of adjoining lots for such work." And, see *Ellis v. La Salle,* 72 Colo. 244, 247, 211 Pac. 104, 105. In some jurisdictions there is a growing tendency to relax the rule requiring strict, literal compliance with the charter, and to regard a substantial compliance as sufficient. But applying that test, we cannot say that in the present case there was a substantial compliance with the charter. We need not consider what the ruling would be if an attempt should be made to shorten the charter time by only a few minutes or an hour.

Discussing provisions of tax laws that are for the benefit and protection of the taxpayer, and, specifically, provisions designed to give him an opportunity of a review of the assessment, Cooley (Taxation [4th Ed.], p. 1141, §511) says: "Every notice which the statute provides for that end, whether by publication or otherwise, must be given with scrupulous observance of all its requisites. The notice cannot be shortened a single day without rendering it ineffectual; the presumption being that the law has made it as short as was deemed consistent with due protection." While it is true that the Supreme Court of the United States, in *Londoner v. Denver,* 210 U. S. 373, 386, said that, "Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature," which statement is quoted in *Denver v. State Investment Co.,* 49 Colo. 244, 249, 112 Pac. 789, 791, the charter requirement that the notice shall give property owners a specified time within which to object to a proposed assessment is not one of the requirements that can be dispensed with, although, in analogy to cases involving judicial process, such a requirement may be waived. Thus, if Miller had filed objections after the time specified in the notice and had been given a hearing on his objections, his right to complain of the defective notice would have been waived. However, he

did not do so and was under no obligation to do so. The statement in the notice that objections filed by April 28 would be considered by the council carried the implication that objections filed thereafter would not be considered.

The disregard of the charter provision concerning notice necessitates a reversal of the judgment. But there was another fatal defect in the proceeding, which will be considered in the next division of this opinion.

■ 4. Noncompletion of the paving.

Included in the district created by the ordinance and included in the work to be done, as originally proposed by the manager and ordered by the council, was the property abutting Third avenue from High street east to the east line of Country Club Place, a distance of 250 feet, and the paving of that part of the avenue. That work was not done. The improvement plan, to that extent, was abandoned by the manager, although by mistake he certified to the council that the work authorized by the original ordinance had been completed and accepted. This was a substantial change in the district and in the map, details, specifications and estimate that section 22 of the charter expressly forbids the manager to make after the first publication of the notice to property owners of the proposed district and the improvements to be made therein.

In *Fifteenth Street Investment Co. v. Denver,* 59 Colo. 189, 147 Pac. 677, the council passed an ordinance providing for the opening and extension of Broadway from Welton street to Blake street. The commissioners appointed in the condemnation proceeding sought, in their report, to eliminate the parcels of land between Walnut street and Blake street—one city block—whereupon the city attorney dismissed the proceeding so far as it related to the omitted property, and the court approved the commissioner's report. After observing that "it is clear that the intent was to eliminate one entire city block from the northwesterly end of the proposed im-

provement," we said: "The making of improvements of the character here involved is a municipal function which by the constitution and the city charter is invested in the board of public works and city council, to be authorized and provided for by ordinance. We cannot give judicial assent to the doctrine that commissioners appointed in the proceedings herein, together with the city attorney, with or without the sanction of the court, possess the power and discretion to modify or change the proposed public improvement authorized by an ordinance of the municipality."

In the present case, if the district created by ordinance and the improvement authorized by ordinance could be changed in the manner shown by the record, why could not two blocks be eliminated; and if two, why not three or more; indeed, why could not three or more blocks be added? Even the council could not make such change without giving to the property owners notice thereof and an opportunity to file a remonstrance under section 22 of the charter, which provides that if a remonstrance against the making of the proposed improvement shall be filed by not less than thirty-five per centum of the frontage of the real estate to be assessed, the improvement shall not be made.

In changing the paving district and in abandoning part of the paving plan adopted by the ordinance, the charter rights of the plaintiff were ignored, and the assessment levy, so far as his lots are concerned, is void.

For the reasons stated, the judgment is reversed, and the cause is remanded for further proceedings in harmony with the views herein expressed.

MR. CHIEF JUSTICE ADAMS did not participate.