**THE CITY OF HOLLYWOOD, a municipal corporation, v. FRED J. DAVIS, JR., and FRED W. HOLLAND.**

19 So. (2nd) 111                                                June Term, 1944
August 1, 1944                                                      En Banc
Rehearing denied August 1, 1944

*T. D. Ellis, Jr.,* for appellant.

*Byrd & McCaughan,* for appellees.

787

CHAPMAN, J.:

Fred J. Davis, Jr., and Fred W. Holland filed their bill of complaint against the City of Hollywood in the Circuit Court of Broward County, Florida. The relief sought was a decree holding invalid designated special assessment liens previously entered by the City against abutting property owners. Fred J. Davis, Jr., having paid no part of the special assessments against his property, sued as a representative of all property owners similarly situated, while Fred W. Holland, having paid all special assessments against his property, sued as a representative of all other property owners similarly situated.

The bill of complaint asked for a restraining order against the collection by the City of Hollywood of any of the special assessment liens; that the special assessment liens be decreed invalid and a refund, with interest, be ordered in behalf of the various property owners having previously made payments to the City of the special assessment liens; that the Court on final hearing decree to counsel for plaintiffs a reasonable attorney fee.

It was alleged, among other things, that the City of Hollywood, pursuant to resolution adopted by the city officials under date of June 30, 1941, providing for the construction of certain street paving improvements, failed and otherwise omitted to substantially comply with the requirements of the city charter, being Chapter 12877, Special Laws of Florida, Acts of 1927. The Resolution No. 1087, providing for the improvement of designated streets, and Resolution No. 1088 and Resolution No. 1095, each passed and adopted by the City Commission of the City of Hollywood, are alleged to be void, not in conformity with the Charter of the City of Hollywood, nor did the City of Hollywood acquire liens against abutting property owners to the streets so improved, and is therefore an unlawful taking of property for reasons viz:

(1) Section (3) of Article 21 of Chapter 12877, *supra*, does not authorize Resolution No. 1087; (2) the improvement was made by day labor and not by contract; (3) the Resolution No. 1087 failed to indicate the location of the improvements by terminal points and routes as required by Section

(5) of Article 21 of the Charter; (4) the Resolution failed to designate a convenient and understandable method of improving the property; (5) When the Resolution was adopted, there was not on file with the city clerk plans and specifications of the improvements and estimated costs thereof; (6) When Resolution No. 1095 was adopted, plans and specifications required by Resolution No. 1087, or an estimate of the costs of the improvements, were not on file with the City; (7) the City failed to keep a book and record therein of these improvements; (8) that no sufficient record of the liens as asserted has been maintained by the City; (9) an assessment roll when the work was completed was not prepared as required by Section 8 of Article 21; (10) the work has not been ratified by designated city officials; (11) next streets, highways and avenues adjoining the streets improved were not assessed with any part of the costs of improvements; (12) the costs of the improvements were made from the General Revenue Fund of the City instead of borrowed money or specially pledged money for the repayment of which said special assessment liens were to be pledged.

An answer was filed by the City of Hollywood and the material allegations of the bill of complaint were either admitted or denied. The several reasons presented by the plaintiffs below for the invalidity of the special improvement liens were each specifically denied in the answer. Testimony was taken on the issues made by the pleadings. Many exhibits were offered by the respective parties and placed in the record. The chancellor on final hearing held that the plaintiffs below had established the material allegations of the bill of complaint and granted the relief prayed. The City of Hollywood appealed.

We do not have involved here the issuance of bonds on the part of the City of Hollywood by an approval of a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing within the City of Hollywood participated as required by Section 6 of Article IX of the Florida Constitution. It appears from the record that the City of Hollywood did not have a special assessment fund, but had a general operating fund in cash

of approximately $31,103.44 out of which the costs of the improvements would be paid. A portion of this fund had been earmarked for this work on October 1, 1941, the beginning date of the fiscal year. The improvement work was completed by the City in the early portion of 1942.

The City Commission of Hollywood, on September 29, 1941, passed and adopted Ordinance No. 502. This Ordinance made appropriation for the fiscal year 1941-1942, based on the budget estimate of expenditures and revenues. This Ordinance earmarked the sum of $15,000.00 and made the amount available for improvement of streets and avenues within the City of Hollywood for the fiscal year beginning October 1, 1941, and ending September 30, 1942.

The city commission passed and adopted Resolutions authorizing the improvements of the streets of the City, and material portions of Resolution No. 1087 are viz:

"Be It Resolved By the City Commission of the City of Hollywood, Florida:

"Section 1. That the construction of the below described local improvement, namely, a Highway Improvement, hereby designated A-45, is hereby ordered to be made under Section 3, of Article XXI of the City Charter on the following named streets, to-wit: Arthur Street, Cleveland Street, Oklahoma Street, McKinley St., Nebraska St., Nevada St., Roosevelt St., Taft St., Carolina St., Wilson St., Harding St., Coolidge St., Missouri St., Scott St., Lee St. New Hampshire St., all being in the north Beach Section of Hollywood; Adams Street from 26th to 28th Avenue; Sherman Street from 18th Avenue to 21st Avenue; said improvements to consist in constructing rock resurfacing six inches in depth and oil and sand surface twenty five feet in width; the property deemed to be specially benefited by said improvement and to be specially assessed for the cost thereof is hereby declared to be all lots or parcels of land situated within one-half ($\frac{1}{2}$) the distance from the street, excluding alleys, on which said improvement is constructed, and the next street if within six hundred feet (600), otherwise only that property within the first three hundred (300) feet of the street on which the improvement is con-

structed, and said property shall comprise a local improvement district designated hereby as District A-45.

"Section 2. That all resolutions or parts of resolutions in conflict herewith are hereby expressly repealed."

Material portions of Resolution No. 1088 are viz:

"Resolution No. 1088.—Approving Plans, Specifications And Estimates For Local Improvements A-45, And Directing The City Clerk To Publish A Notice Of The Public Hearing To Hear The Objections, If Any, To The Confirmation of Resolution No. 1087.

"Whereas, on June 30, 1941, Resolution No. 1087 ordering local improvement A-45 was adopted by this Commission, and

"Whereas, in conformity with Section 5, of Article 21, of the Charter of the City, the City Manager has had prepared by the City Engineer and filed with the City Clerk plans and specifications for the improvements ordered by said Resolution No. 1087, as well as an estimate of the cost thereof, showing the estimated amount of costs and incidental expense to be assessed against the property especially benefited; Arthur, Cleveland, Oklahoma, McKinley, Nebraska, Nevada, Roosevelt, Taft, Carolina, Wilson, Harding, Coolidge, Missouri, Scott, Lee and New Hampshire Streets, all being in the north Beach Section of Hollywood; Adams Street from 26th to 28th Avenue; Sherman Street from 18th Avenue to 21st Avenue;

"Now Therefore, Be It Resolved By The City Commission Of The City Of Hollywood, Florida:

"Section 1. That the plans and specifications of Local Improvement A-45, ordered by Resolution No. 1087 as well as the estimates of the costs thereof, as filed with the City Clerk be and the same are hereby approved, and the City Clerk be and she is hereby directed to publish a notice in conformity with Paragraph C, Section 5, Article 21, of the Charter of the City of Hollywood, Florida."

Material portions of Resolution No. 1095 are viz:

"Resolution No. 1095—Confirming Resolution No. 1087:

"Whereas the City Commission at a meeting held at 9 o'clock September 8, 1941, after legal notice given and after

the filing with the City Clerk of plans, specifications and estimates of cost thereof, heard all objections presented by interested persons to the confirmation of Resolutions Nos. 1087 and 1093 passed and adopted by the City Commission, ordering local improvements A-45 and A-46, and no objections were sustained, now, therefore, Be It Resolved by the City Commission of the City of Hollywood, Florida; that

"Resolutions Nos. 1087 and 1093 adopted by the Commission, be and the same are hereby confirmed.

"Passed and Adopted this 8th day of September, 1941."

Published for the issues of August 20th and 27th, 1941, in a weekly newspaper of Broward County, Florida, to-wit: The Hollywood Sun, was the notice of Highway Improvement by the City of Hollywood, and is viz:

"Notice Is Hereby Given that the City Commission of the City of Hollywood, Florida, will meet Monday, September 8, 1941 at 9 o'clock A. M. in the City Commission Room at the City Hall in Hollywood, Florida, for the purpose of hearing the objections, if any, of all interested persons to the confirmation of Resolution No. 1087 passed and adopted by the City of Hollywood, ordering local improvements by way of special assessments and specifying the lots and parcels of land to be specially assessed therefor.  Said local improvements are to consist of constructive rock resurfacing, oiling and sand surfacing on the following streets:

"Arthur, Cleveland, Oklahoma, McKinley, Nebraska, Nevada, Roosevelt, Taft, Carolina, Wilson, Harding, Coolidge, Missouri, Scott, Lee and New Hampshire Streets, all being in the North Beach section of Hollywood;  Adams Street from 26th to 28th Avenue; Sherman Street from 18th Avenue to 21st Avenue; Funston Street, 1½ block East, 17th Avenue to 15th Avenue.

"Plans, specifications and estimates of the cost thereof are on file in the office of the undersigned Clerk of the City Hall in Hollywood, Florida.

"This 20th day of August, 1941,

"Blanche E. Mann, City Clerk
City of Hollywood, Florida."

"(Aug. 20-27)

Section 8 of Article VIII of the Florida Constitution grants to the Legislature the power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. Article XXI of Chapter 12877, *supra,* is the controlling provision of the Chapter to be observed in the pavement of the streets and the acquisition of the special assessment liens. The Legislature has the power to authorize local improvements and assessments of abutting property for its proportionate part of cost. See Howarth v. City of DeLand, 117 Fla. 692, 158 So. 294. A municipal corporation is without inherent power to levy special assessments, and, in order that such assessments be enforceable, they must be made pursuant to legislative authority and the method prescribed must be substantially folowed. See Simpson v. City of Brooksville, 137 Fla. 623, 188 So. 794; City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476; Carr v. City of Kissimmee, 80 Fla. 759, 86 So. 699, and similar cases.

Presented by this appeal for adjudication here is the simple question of whether or not the City of Hollywood observed in a substantial manner its Charter provisions (Article XXI of Chapter 12877, Acts of 1927) in making the challenged street improvements. The answer to the question demands a careful and analytical study of not only the testimony of the witnesses but the many exhibits offered by the parties and now appearing in the record, coupled with a construction or interpretation of the several provisions of Article XXI of Chapter 12877, as may be applicable:

(1) It is contended that Resolution No. 1087, passed and adopted by the City Commission of Hollywood, is void because on its face it is shown to have been enacted under Section 3 of Article XXI of Chapter 12877, and the cited provision of law does not authorize the street improvements, but Section 5 of Article XXI of Chapter 12877 authorizes the street improvements. The answer to the contention is that the typographical error was corrected by Resolution No. 1088, passed and adopted by the City Commission at the same session. See Resolution No. 1088, *supra.*

(2) It is next contended that the street improvement liens are void because it should have appeared in the Resolution that the contemplated improvements of the streets was to be performed: (a) by a contract let by the City; or (b) labor under the direct control and management of the City. The answer to the contention is that the record establishes conclusively that the street improvement was done by the City by labor hired or employed by it and the appellees at no time interposed any objections to the completion of the improvements under the direction of the City.

(3) It is contended that Resolution No. 1087 failed to indicate the location of the improvements by terminal points and routes as required by Subsection (a) of Section 5 of Article XXI of Chapter 12877. The answer to the contention is that the Resolution named the streets of the City of Hollywood which were to be improved. It is shown by the record that the appellees owned property located on Oklahoma Street. This street is shown to be 30 feet wide and 400 feet long. The Engineer's report of the street is that the pavement thereon consisted of 1330 square yards and the total estimated costs of the pavement of Oklahoma Street was the total sum of $383.41. The maps of the City appearing in the record disclose the dimensions of the several abutting lots on Oklahoma Street owned by appellees.

(4) It is contended the Resolution failed to designate a convenient and understandable method of improving the property. The exact language of the Resolution is a sufficient answer to this contention.

(5) When the Resolution (No. 1087) was adopted, it is contended, there was not on file with the city clerk plans and specifications of the improvements and estimated costs thereof.

(6) When Resolution No. 1095 was adopted, plans and specifications required by Resolution No. 1087, or an estimate of the costs of the improvements, were not on file with the City. The answer to contentions 5 and 6 is the testimony of the former Superintendent of the City, Mr. Blackwell, whose testimony is not disputed on this point by any other evidence in the record, and is viz:

"Q. Now these two resolutions referred to numerous streets. The street on this estimate you have just been looking at is Oklahoma Street. Was there a similar estimate prepared, except of course as to the figures, for each of the streets mentioned in the resolution? A. There was, yes, sir.

"Q. Now before presenting this estimate, or these estimates to the City Commission, did you present them to the City Clerk of Hollywood? A. No, I don't think so. I have no recollection of doing that. Q. Well, did you personally bring these estimates in to the City Commission meeting? A. Yes sir. Q. Now after the adoption of the resolution, what did you do with the estimates? A. Well, I didn't do anything with them. Q. Did you leave them there with the City Commission? A. No, they were filed in the City Clerk's file. Q. After the adoption of these resolutions or before? A. It was immediately thereafter."

Mrs. Mann, City Auditor and Treasurer, testified as to the estimates of improvements on Oklahoma Street. The estimates of the costs of improvements on Oklahoma Street were made and prepared by the City Engineer and Street Foreman. The Street Foreman kept a record of the costs as the improvements were made. Each of these records was filed with her as Auditor and Treasurer. The estimates of the costs were filed at the time of the passage and adoption of Resolutions 1087, 1088 and 1095. The record of the costs of improvements as made by the Street Foreman was filed as the work was prosecuted, and all other street pavement jobs were handled like Oklahoma Street.

(7) It is contended that the City of Hollywood failed to keep a book or record of these improvements; (8) that no sufficient record of the liens as asserted has been maintained by the City. It is true that Subsection (e) of Section 5 of Chapter 12877 directs that after the adoption of the confirmation Resolution, which includes the submitted estimates of the cost of the work, the same shall be recorded in a special book kept for the purpose; that the assessment book shall describe the property affected, the estimated amount assessed against the abutting property, and the book shall be ruled in such a way that any person can readily ascertain the assess-

ment against any piece of property affected. The failure to obtain the lien book and record therein the confirmation resolution and estimates of costs of the improvements assessable against abutting property owners provided for by Subsection (e) of Section 5 of Article XXI is not such an irregularity as may vitiate an improvement lien. Especially is this true in the absence of proof that the figures relied upon are deceptive or misleading. The accuracy of the record of the estimates of costs nor the record of the actual costs of the improvements have not been questioned or challenged. The technical contention is made that the liens are void because the record thereof does not appear in a book. See Gulf View Apartments v. City of Venice, 108 Fla. 41, 145 So. 842.

(9) It is contended that the Special Assessment liens are invalid because the City of Hollywood failed or omitted to keep or maintain an Improvement Assessment Roll, as provided for in Section 8 of Article XXI of Chapter 12877, *supra;* that the Assessment Roll shall contain (1) description of the property benefitted; (2) the name or names of the owners thereof; (3) the amount of the assessment against each tract of land improved; (4) a true copy of the final estimate of the cost of the work, including actual or estimated cost of incidental expenses; and (5) a certificate of the City Engineer that the amounts set out in the final estimate and against benefited property are in accordance with the terms of the City Charter of Hollywood.

Mr. Langley, City Tax Collector, testified that his office maintained a tax roll disclosing tax liens as required by the Charter, *supra.* On close examination it was shown that the roll as kept did not measure up to the charter requirements but did so substantially. The certificate of the City Engineer was not on the roll but in other ways it met the requirements of the Charter.

(10) It is next contended that the street improvement work had not been approved or ratified by designated officials of the City of Hollywood. The answer to this contention is that a certificate on the part of designated officials to the effect that the work had been completed was not placed among the records in the office of the Clerk of the City, but

it does appear that daily reports of the progress of the work was made and so continued until the work was completed. The tax roll, including these special assessments liens, was made up by the city officials and delivered to the tax collector and it appears that more than half of the liens have been paid by different abutting property owners. It does not appear that the plaintiffs below objected at anytime to the city officials as to the alleged unlawful manner in which the liens were being handled. In the case of City of New Smyrna v. Mathewson, 113 Fla. 861, 152 So. 706, we held that the law of estoppel operated against a property owner where he stood by and saw lands improved and said nothing about the irregularities of the city in an attempted compliance with the Charter in perfecting its special assessment liens.

(11) It is next contended that streets, avenues and highways of the City of Hollywood adjoining the streets designated for surface improvement were not assessed with any of the costs of said improvements and therefore the entire pavement program is void and illegal under Section 8 of Article XXI of Chapter 12877. The Charter confers on the City Commission discretion in deciding the streets, highways or avenues that should be paved. It has not been made to appear by the record that the City Commission of the City of Hollywood abused its discretion or unlawfully assessed costs of improvements here involved.

(12) It is contended that the Special Assessment Liens are invalid because the City of Hollywood failed or omitted to give notice by publication of a hearing of objections to the confirmation of the several assessment liens; that Section 10(a) of Article 21 of Chapter 12877 provided for such a published notice and hearing and to disregard this provision of the Charter deprived the plaintiffs in the lower court (appellees here) of the constitutional requirement of due process. It is simultaneously admitted that a previous notice to interested property owners involving the identical special assessment liens had been published on August 20th and 27th, 1941, in The Hollywood Sun, a weekly newspaper published in Broward County, Florida. The notice provided for by Section 10(a), *supra,* was not given by the City of Hollywood.

McQuillin on Municipal Corporation, Vol. 5 (2nd Ed.) 722-24, par. 2229, states the rule thusly:

"Hearing on Proposed Assessment.—'It has always been the general rule in this county, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceeding. That 'due process of law' requires this has been uniformly recognized.' Assessment proceedings must be held in the manner contemplated by the law authorizing assessments to be made. The whole number of commissioners appointed under the law must act as a body, that is, all the commissioners must act, in order to render the assessment valid. Assessment proceedings not held in a public place and at the time designated in the notice are void. So confirmation of an assessment based upon a petition showing that the assessment was made before the time stated in the notice, is void."

"If under the particular law the determination as to what property shall be assessed, and what omitted, is solely within the judgment of the commissioners their decision will stand unless impeached for fraud."

The rule as enunciated by McQuillan, *supra,* has been recognized and approved by the Supreme Court of Florida in many cases. The interested property owner is constitutionally entitled to but one notice. See Utley v. City of St. Petersburg, 111 Fla. 844, 149 So. 806, 292 U. S. 106, 54 S. Ct. 593, 78 L. Ed. 1155, reh. den. 292 U. S. 604, 54 S. Ct. 712, 78 L. Ed. 1466; Escott v. City of Miami, 107 Fla. 273, 144 So. 397; Abell v. Boynton, 95 Fla. 984, 117 So. 507; Anderson v. Ocala, 67 Fla. 204, 64 So. 775, 52 L.R.A. (N.S.) 287; Crawford v. City of Decatur, 226 Ala. 418, 147 So. 615; Swinson v. City of Dublin, 178 Ga. 323, 173 S.E. 93; Miller v. City and County of Denver, 89 Colo. 601. 5 Pac. (2nd) 875; City of Phoenix v. Wilson, 39 Ariz. 250, 5 Pac. (2nd) 411. We hold that Section 10(a), *supra,* is directory only and not mandatory.

In support of the contention that the decree appealed from should be affirmed, counsel emphasize our holding in the recent case of City of Miami Beach v. Tenney, 150 Fla. 241, 7 So. (2nd) 136. It is suggested that this ruling is but

a reaffirmance of our holdings in City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476, and City of St. Cloud v. Carlson, 78 Fla. 131, 82 So. 616. We are in accord, generally, with the comments of counsel for appellees concerning the cited cases, but we sharply disagree when requested to hold that the rule enunciated in the Miami Beach case, and similar cases, is applicable to the facts presented in the case at bar. An analysis and close study of the cases cited by counsel, *supra,* will develop the several points of cleavage. The application of the improper principle of law by the learned chancellor below to the facts involved in this controversy necessitates a reversal of the final decree assigned as error on this appeal.

The decree appealed from is reversed with directions to dismiss the bill of complaint.

It is so ordered.

BUFORD, C. J., TERRELL and ADAMS, JJ., concur.