Argued October 26, affirmed December 2, 1959

# PAGET ET UX *v*. CITY OF PENDLETON
## 346 P. 2d 1111

*Arthur H. Lewis,* Portland, argued the cause for appellants. With him on the brief was William E. Hanzen, Pendleton.

*Robert N. Funk* and *Gene B. Conklin,* Pendleton, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, REDDING and KING, Justices.

O'CONNELL, J.

The plaintiffs seek to enjoin the defendant city of Pendleton from foreclosing a water line extension lien arising out of an assessment made by the defendant against property in the Montee Addition to the city of Pendleton.

In 1955 Mr. William F. Brenner, a contractor and builder, was in the process of developing the Montee Addition which had just been platted, and which consisted of 127 lots. He requested the Pendleton city council to cooperate with him in working out an arrangement by which the Addition could be furnished with water through an extension of the defendant's water system. As a result of this request the following action was taken.

On February 5, 1955 the city council adopted

Resolution 192 in which it was resolved that it was expedient and necessary to create a water line extension district and to lay waterlines in such district at an estimated cost of $54,400; that an assessment district consisting of all of the lots in the Addition be created for the payment of such improvements; that the cost of making the improvements be made a lien upon all of the lots and parts of lots benefited by the improvements and that the assessment should be $466.20 against each of 71 lots designated in the resolution (these being the lots in the Addition upon which Brenner had begun the construction of dwelling houses). The resolution provided that in the event that the remaining 56 lots in the Addition were improved by erecting residence structures, the city would lay all water mains in that remaining area at its own expense and refund to Brenner $35.71 for each of the 56 lots improved to reimburse him for the outlay made on the 71 lots assessed. The following excerpt from the minutes of the city council meeting of January 26, 1955 explain this latter computation:

"* * * The City Manager presented for the Council's consideration cost figures for water main extension to the Montee Addition on the 71 unit development basis and were as follows: total cost of extending 13,600 lin. ft. 6" and 8" line in place equals $54,400.00. The City's share of this cost amounts to $21,300.00, leaving the cost of main extension to be borne by William Brenner at $33,100.00. Mr. Brenner's share of cost on the basis of 127 unit development was previously determined to be $31,100.00. During the discussion it was understood between all parties that if Mr. Brenner, upon completion of the 71 unit development, proceeded to complete the remainder of the 127 units, the $2,000.00 paid by Brenner over and above the $31,100.00 will be pro-rated back to him on the basis of 1/56 of the $2,000.00 amount per lot."

Prior to the adoption of the resolution the defendant had obtained from all of the owners of the lots in the Montee Addition the written consent to the immediate entry of a lien against each of the lots for the amount to be assessed against such lot. The written agreement also contained the following waiver:

"* * * each of the undersigned does hereby waive any and all irregularity of any matter, nature or thing in connection with said proceeding and particularly waives any right to objection or to be heard concerning the entry of said lien and consents to the correctness of the entry of said lien and the validity and subsistence and continuing force and effect and validity of said lien as the same be entered pursuant to the terms of said resolution to be adopted and in the amounts set forth in said Engineers Report."

The Pendleton City Council enacted Ordinance No. 2089 and Ordinance No. 2090 which provided for the construction of the water main; the assessment of $466.20 against each of the 71 lots; and for the creation of a lien on the lots for the amount of the respective assessments. Ordinance No. 2089 provided in part as follows:

"In the event that all of the owners of all of the lots, tracts or parcels of land to be benefited shall waive said notice herein provided, in writing, file with the City Recorder, which waiver may, among other things, be filed at the time of approval of the plans and specifications by the council and at the time of the adoption of the resolution directing that said improvement be accomplished, then and in that event notice herein need not be published, posted or mailed as herein provided and all objections shall thereby be deemed waived by said owners, and said amount of the estimate, if consented to by the said record owner, shall immediately upon adoption of the resolution or an

ordinance containing the terms thereof, become a lien upon the said lots, tracts and parcels of land and be placed upon the lien docket * * *."

Eventually the defendant constructed the water line extension pursuant to the preceding arrangement. The defendant paid $21,299.80 of the $54,400 estimated cost, and the remainder, amounting to $33,100.20 was assessed to the 71 lots.

The plaintiffs are the owners in fee of one of the lots included in the 71 made subject to the assessment, having acquired title through mesne conveyances from one of the parties to the consent agreement referred to above. The action of the defendant city in creating the water line district and in levying the assessment against the 71 lots is attacked by the plaintiffs on the ground that it is "unreasonable, discriminatory, unlawful, ultra vires and void." More specifically, it is contended that the city did not have the authority under its charter to make such improvements or to levy the assessment; that even though defendant had such authority it exercised it improperly in that there was an attempt to impose a lien upon the 71 lots prior to the construction of the water main and before such lots would benefit by the improvement; that it exempted the property benefited by the improvement; that plaintiffs and the other owners of the 71 lots were charged for connections to other property; that the assessment overcharged each of the 71 lots the amount of $35.71; that the provision for rebate to Brenner was improper; that only a part of the property benefited was assessed for the entire improvement, and that the 71 lots were assessed in excess of benefits received.

The trial court dismissed the plaintiffs' complaint, holding that the defendant city had the authority

under its charter to construct water line extensions and to assess the costs to the property benefited. In answer to plaintiffs' contention that the assessment was not levied in a lawful manner, the trial court held as follows:

"The owners of the property at the time the ordinances were passed urged the City to make the improvements and assessments in the manner in which they were done. A consent to the assessments and a waiver of all irregularities of any manner were signed and filed with the city as an inducement to the improvement, and no objection was raised by the interested parties to the formulae for assessments. Plaintiffs were not unaware of the proceedings. One of the plaintiffs, Lowel Paget, was present at the council meeting at the time that certain of the resolutions were passed, and plaintiffs and their predecessors in interest have accepted all the benefits accruing to their property. Paget Mortgage Company [originally a party plaintiff, but not a party on this appeal] has paid a portion of the assessments provided by the ordinance through advances under its mortgage and over three years transpired before the plaintiffs filed suit protesting to the validity of any of the assessments.

"The court is of the opinion that the plaintiffs, having voluntarily accepted the benefits and paid a portion of the levies, have waived any right, if any existed, to object to the validity of the assessment."

We consider first the defendant's authority to create a water extension district and to make an assessment for the extension of water mains into the district. The general authority of the defendant city is found in Section 3 of its Charter, which reads as follows:

"Section 3. POWERS OF THE CITY. The city shall have all the rights, powers, privileges and

immunities which the constitutions, statutes, and common law of the United States and of this state expressly or impliedly grant or allow municipalities, including those rights, powers, privileges, and immunities which a city can exercise upon specifically accepting them or upon being granted the power to exercise them by the people of the city or the legislature of the state, as fully as though this charter expressly stated each of those rights, powers, privileges, and immunities and as though each of them had been specifically accepted by the city or granted to it by the people of the city or by the legislature of the state.

"The powers retained herein, by Section 1 hereof, from the special act of the Oregon Legislature of February 15, 1899, as amended incorporating the City of Pendleton, which act, as amended, this act amends, shall be deemed a part of the powers of the city."

Section 5 of the Charter implemented this general grant of authority by the following provision:

"Section 5. All rights, powers, privileges, and immunities of the city shall be exercised in the manner prescribed in this charter, or, if the manner be not prescribed in this charter, then in the manner provided by ordinance or resolution of the council or the laws of the state."

The authority to make local improvements and assessments is contained in the following sections of the Charter:

"Section 37. PROCEDURE FOR MAKING LOCAL IMPROVEMENTS. The time, method, and manner of making all street, sidewalk, sewer, and other public improvements; the method of financing the same; the procedure for vacating, altering or abandoning streets and other public improvements, shall be governed by ordinance, or, in the absence of ordinance, by the general laws of Oregon.

"Section 38. SPECIAL ASSESSMENTS. The procedure for levying, collecting, and enforcing

special assessments for public improvements or other services to be charged against real property shall be governed by ordinance."

Considering the broad grant of power to the city of Pendleton in sections 3 and 5 of the charter, together with the more specific power contained in sections 37 and 38 to provide for local improvements, we are of the opinion that the defendant city acted lawfully in enacting the ordinances creating the water extension district and providing for an assessment to finance the expenditures incurred.

■ The broad powers contained in sections 3 and 5 would in themselves be sufficient to authorize the defendant to enact the ordinances in question. *City of Grass Valley v. Walkinshaw*, 34 Cal2d 595, 212 P2d 894 (1949); *Liberis v. Harper*, 89 Fla 477, 104 So 853 (1925); *State v. Tampa Waterworks Co.*, 56 Fla 858, 47 So 358 (1908); *Porter v. Vinzant*, 49 Fla 213, 38 So 607 (1905); *City Commission of Jackson v. Hirschman*, 253 Mich 596, 235 NW 265 (1931); *City of Duluth v. Cerveny*, 218 Minn 511, 16 NW2d 779 (1944); *State v. Otis*, 93 Ohio St 83, 120 NE 313 (1918); *City of Denton v. Denton Home Ice Co.*, 119 Tex 193, 27 SW2d 119, 68 ALR 866 (1930). See *City of Grants Pass v. Rogue River Public Service Corp.*, 87 Or 637, 171 P 400 (1918); 2 McQuillin, Municipal Corporations (3rd ed) § 10.25 (1949); 2 Antieau, Municipal Corporation Law § 14.00, p 290. But we interpret sections 37 and 38 as a specific grant of the power to construct a water extension line and to assess the property benefited by the improvement.

The plaintiffs argue that the term "other public improvements" does not include the construction of a water line extension as was provided for by ordinance in the present case. This is a narrow construction of the charter and we refuse to adopt it. The exten-

sion of a water main is as much a public improvement as the construction of streets, sidewalks and sewers expressly specified in the charter.

■ Although we have held that the furnishing of water by a city is a properitary and not a governmental function, it does not follow that such an activity is not a proper municipal function or that the construction of facilities to supply water is not a "public improvement." We think that the furnishing of water is the same class of public works as the construction of sewers specifically provided for in the charter. The importance of water to the health and convenience of the inhabitants of a city is equal to that of the disposal of sewage. Both are public improvements. See *City of McMinnville v. Howenstine,* 56 Or 451, 109 P 81 (1910).

Plaintiffs argue that the charter must be strictly construed and that the rule of ejusdem generis precludes us from regarding a water extension improvement as the same class of improvement as those specified in the charter. But this would call for a strict construction of the charter when the charter itself directs us to construe it liberally. Section 4 of the charter provides as follows:

> "Section 4. CONSTRUCTION OF CHARTER. In the charter the enumeration of or reference to particular rights, powers, privileges, and immunities shall not be construed to be exclusive. The charter shall be liberally construed to the end that the city may have all necessary and convenient powers for the conduct of its municipal affairs, as contemplated by the municipal home rule provisions of the constitution and laws of the state."

With the aid of this constructional direction we find no difficulty in concluding that the improvement falls within the charter, and we hold therefore that the

defendant was acting within its jurisdiction in enacting the ordinances in question.

■ It is next argued that even though it be held that the defendant had the authority to make the improvement and assessment, the assessment was not properly made in that it constituted an overcharge on the owners of the 71 lots and exempted from the charge the other 56 lots benefited. Plaintiffs' title to the lots in question was originally held by one of the property owners who signed the written consent set out above expressly waiving objection to all irregularities in connection with the proceedings and waiving objection to the imposition of a lien upon the lot. Plaintiffs had notice of this agreement between the lot owners and the defendant.

■ Where a city has jurisdiction to make an assessment, an agreement by the property owners waiving their right to protest the assessment is binding upon them and their successors in interest with notice. *Ingram's Estate v. Gilmore,* 110 Ind App 298, 38 NE2d 860 (1942); *Stodola v. City of Cedar Rapids,* 192 Iowa 1025, 183 NW 607 (1921); *Campbell Const. Co. v. Williamson,* 263 Ky 336, 92 SW2d 332 (1936); *Mock v. Boyle,* 86 NE2d 475 (Ohio 1949); *Patterson v. Ashland,* 95 Or 233, 187 P 593 (1920); *Wagoner v. City of La Grande,* 89 Or 192, 173 P 305 (1918); *Dunn v. City of Superior,* 148 Wis 636, 135 NW 145 (1912); 13 McQuillin, Municipal Corporations (3rd ed) § 37.265 (1950); 2 Antieau, Municipal Corporation Law § 1415. Having held that the defendant had jurisdiction to make the improvement and the assessment in this case, the plaintiffs are bound by the consent agreement signed by their predecessor in title.

The decree of the lower court dismissing plaintiffs' complaint is affirmed.