**PAUL SCOTTON CONTRACTING COMPANY, INCORPORATED, a Delaware corporation, et al., Plaintiffs,**

v.

**MAYOR AND COUNCIL OF the CITY OF DOVER, and the City of Dover, a municipal corporation of the State of Delaware, Defendants.**

Court of Chancery of Delaware, Kent.

Dec. 13, 1972.

John J. Schmittinger, of Schmittinger & Rodriguez, Dover, for plaintiffs.

Januar D. Bove, and Bertram S. Halberstadt, of Connolly, Bove & Lodge, Wilmington, for defendants.

MARVEL, Vice Chancellor:

This action is allegedly brought by plaintiffs on behalf of all other property owners similarly situated, however, no attempt has been made to comply with the provisions of Rule 23 concerning the bringing of such form of action, and there has been no determination of a class. Plaintiffs' complaint seeks to have declared invalid special assessments for sewer and water main construction imposed on plaintiffs' real estate by defendants, which assessments under the terms of the charter of the City of Dover and statutes of the State of Delaware purportedly constitute liens against plaintiffs' properties. They seek to have the enforcement of said liens enjoined on the ground that they have been invalidly imposed, such special assessments being attacked on the grounds that they are ultra vires under the charter of the City of Dover, 36 Laws of Del., Ch. 158, that they were not assessed in accordance with the provisions of a resolution of the City Council of Dover of January 27, 1960, and that they were assessed without notice or opportunity to be heard. Plaintiffs and defendants have filed a stipulation as to conceded facts deemed material for the purpose of deciding their cross-motions for summary judgment. This is the decision of the Court on such motions.

Plaintiff Burger Construction Corporation is the owner of real property located on the north side of Walker Road in the City of Dover in an area known as Northwest Dover Heights. Plaintiff Paul Scotton Contracting Company, Incorporated, is the owner of real property located on the

west side of Route 13 in the City of Dover, while plaintiffs George J. and Beulah D. Pyott are the joint owners of three pieces of real property located on the south side of Route 13, also in Dover.

The area which includes the property of plaintiffs Scotton and of the Pyotts, namely, the Martin-Cowgill Street area, was annexed to the City of Dover on August 14, 1962. Northwest Dover Heights, which contains the property of the plaintiff Burger, was annexed to the City of Dover on September 10, 1963 after the voters of Northwest Dover Heights had approved annexation in a referendum held on September 7, 1963.

In August 1965 the City of Dover began the installation of a sewage system in Northwest Dover Heights, including the locating of a sewer line in Walker Road along which plaintiff Burger's lot fronts. The system was completed and in service by December 1965, six months prior to the time that Burger became the owner of the lot it presently owns. Since the sewer line was already installed at the time Burger purchased its lot, such plaintiff assumed that the sewer had been paid for inasmuch as the title had been searched when the lot was purchased and no lien was reported.

Also in 1965 the City of Dover began the construction of a water main system, including a water transmission line in the area of Roosevelt Avenue east and west of Route 13 in the Martin-Cowgill Street area. Sometime in 1965 or 1966 a twelve inch water transmission line was installed in the right-of-way of Route 13 on which plaintiff Scotton's lot fronts. Such plaintiff's president, Paul Scotton, was aware of the work being done but gathered the impression from what he was told by workmen on the scene that they were putting in a water transmission line to serve homes in newly annexed areas farther south along Route 13. For such reason he did not believe that his corporation would be subject to an assessment for the costs

of constructing such line. About the same time a water main was installed in the right-of-way of Route 13 along which the property owned by the Pyotts also fronts. Such property has been owned by the latter prior to the August 1962 annexation of such property by the City of Dover. These plaintiffs were aware of the work being done but assumed it would be paid for by bonds authorized by a January 1963 referendum.

Thereafter, at a public meeting held on December 12, 1966, the City Council of Dover, by resolution, levied an assessment against the property of Burger and other property owners of the City of Dover similarly situated for the costs of sewer line construction in the Northwest Dover Heights Area. The assessment was determined on a mathematical basis of an eight-inch sewer line, one-half of the construction costs to be borne by each of the abutting property owners on either side of the right-of-way. At the same meeting the City Council by resolution levied a special assessment against the properties of the plaintiffs Scotton and Pyotts as well as of other property owners similarly situated for the costs of water main construction in the Route 13 area.

This action was purportedly taken under authority of the resolution of the City Council of Dover of January 27, 1960 entitled:

"Policy of the City of Dover Relating to Areas Annexed, to be Annexed, and Areas within the City Limits Previously Unassessed."

Under the terms of this resolution the City Council, inter alia, established estimated charges on a front-footage basis for sewer and water line installation in areas not presently having such services. It also established the procedure for making the assessments as follows:

"15. Charges assessed to property owners pursuant to this Resolution shall be established by the Utility Committee

subject to the approval of City Council and thereafter filed with the City Clerk and published at least once in a local newspaper to be effective as of the date set forth in such notice. Such charges as are established as aforesaid shall become a lien on the property concerned. Such charges are to be entered on the tax records of the City of Dover and such entry shall constitute notice to the property owner of the charge against the property * * * ".

By further resolution the City Council, at a public meeting held on November 9, 1964, established a revised frontage-foot charge of $3.00 for water line and $5.00 for sewer line construction. These revised frontage-foot charges constituted the basis on which the December 12, 1966 assessments were made.

The making of special assessments for local improvements is an exercise of sovereign power by the legislature, 48 Am. Jur., Special or Local Assessments, § 8, municipal corporations as such having no inherent power to levy such assessments, 14 McQuillin on Municipal Corporations, § 38.06, and City of Hollywood v. Davis, 154 Fla. 785, 19 So.2d 111. However, in the absence of constitutional limitations, a state legislature may delegate to a municipal corporation and its officers such powers and functions as it may deem necessary, including the power to make special assessments, 2 McQuillin on Municipal Corporations, § 4.09, 14 McQuillin on Municipal Corporations, supra, and People v. Letford, 102 Colo. 284, 79 P.2d 274.

Since the exercise of the power to make special assessments is in derogation of the rights inherent in the ownership of private property, the law purporting to grant such power must necessarily be strictly construed in reaching a determination as to whether or not such power exists, 14 McQuillin on Municipal Corporations, § 38.07, and United States v. Merriam, 263 U.S. 179, 44 S.Ct. 69, 68 L.Ed. 240.

Thus, it is generally held that the power to make public improvements does not of itself carry with it the power to levy and collect special assessments to defray the costs of such improvements, 14 McQuillin on Municipal Corporations, § 38.07, and Wilt v. Bueter, 186 Ind. 98, 111 N.E. 926, 115 N.E. 49. And it is clearly settled in Delaware that a municipal corporation has no authority beyond that which is expressly granted, fairly implied or indispensible to its declared objects and purposes, Mayor and Council of Wilmington v. Dukes, 2 Storey, 52 Del. 318, 157 A.2d 789, and Mayor and Council of Wilmington v. Smentkowski, Del., 198 A.2d 685.

Plaintiffs contend on the basis of these general principles that the special assessments made by the City Council of Dover in this case are void because they were not expressly authorized by the charter of the City of Dover and further that the power to make such assessments cannot be implied from any powers expressly granted by the City charter.

I agree that the power to levy special assessments cannot be fairly implied from Section 25 of the City charter which gives the Council the "power to operate a . . . water plant for the City and to do all things necessary for its maintenance and operation" or from Section 26 giving the Council the power to "install any or additional sewers in the City," 36 Del.L., Chap. 158, §§ 25 and 26. However, I am convinced that such power is expressly conferred by Section 3 of the Charter which provides that:

"The enumeration of particular powers by this Charter shall not be held or deemed to be exclusive but, in addition to the powers enumerated herein, implied thereby, or appropriate to the exercise thereof, it is intended that The City of Dover shall have, and may exercise, all powers which, under the Constitution of the State of Delaware, it would be competent for this charter specifically to

enumerate. All powers of the City, whether expressed or implied shall be exercised in the manner prescribed by this charter, or, if not prescribed herein then in the manner provided by ordinance or resolution of the Council."

This language appears to me to be explicit. Even under a rule of strict construction it is clear, in my opinion, that Section 3 was intended to grant the City of Dover broad powers to act in the absence of express provisions in the charter. The City of Dover is granted not only enumerated powers but those " * * * implied thereby * * *" or " * * * appropriate to the exercise thereof * * *". In addition, Section 3 grants " * * * all powers which * * * it would be competent for this charter specifically to enumerate." And although nowhere in the Charter is the term "home rule" used, I note a similarity in language between the above quoted provisions of the charter of the City of Dover and the recently enacted home rule provisions found in 22 Del.C. § 801 et seq., which allow municipalities to amend their own charters to confer " * * * all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant by specific enumeration." And in at least one case dealing with a broad provision in a city charter similar to the one here the Supreme Court of Oregon was of the view that such a broad provision would in and of itself be sufficient to empower a city to make special assessments for the construction of water lines, Paget v. City of Pendleton, 219 Or. 253, 346 P.2d 1111. I conclude that under the clear mandate of Section 3 of its City charter the City of Dover has the authority to make special assessments such as the ones here in issue, there being no express charter provision or applicable general law to the contrary.

Plaintiffs also contend that the special assessments here under attack are void because those assessed were not given prior notice of the assessments and the opportunity to appear at a public hearing before the assessments were levied and the liens attached. They contend that the charter of the City of Dover and the resolution of January 27, 1960 are unconstitutional and void on their face, and, alternatively, that the special assessments were unconstitutional and void against plaintiffs because they were in fact given no prior notice of the assessment and no hearing.

The first question to be dealt with then is whether or not under the due process clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 6 of the Delaware State Constitution plaintiffs were in fact entitled to notice and a hearing. The special assessments in question were assessed against the plaintiffs' properties on a front-footage basis pursuant to the procedure established in the Council resolution of January 27, 1960. The cost of construction was mathematically calculated, and on November 9, 1964, the City Council of Dover at a public meeting adopted revised front-foot charges of $3.00 and $5.00 for all abutting property owners on either side of the water main and sewer line construction then being planned. The assessments were not actually levied against plaintiffs' property until December 12, 1966 after the construction of such facilities had been completed.

First of all it is clear that the Legislature itself could have made such special assessments on a foot-frontage basis without affording those to be assessed a prior notice and a hearing. In the case of French v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879, the Supreme Court of the United States held that the apportionment of the entire cost of a street pavement upon the abutting lots on a foot-frontage basis, without any preliminary hearing as to the benefits conferred upon such property, may be authorized in a city charter by the legislature, and that such procedure does not constitute a taking of property without due process of law. In other words, where the only act necessary to ascertain the amount of an assess-

ment upon property is derived from a simple mathematical calculation as where the apportionment is made by the front-foot rule or according to area and where no discretion is left to the municipal officers, a notice seems not to be essential to the validity of such an assessment and levy, Heavner v. City of Elkins, 69 W.Va. 255, 71 S.E. 184, English v. City of Wilmington, 2 Marv. 63, 37 A. 158, and City of Perry v. Davis & Younger, 18 Okl. 427, 90 P. 865. In fact, plaintiffs appear to concede that had these assessments been made directly by the Legislature they would not have been entitled to prior notice and an opportunity to be heard. Plaintiffs, however, contend that where the legislature has delegated its power to make special assessments on a foot-frontage basis to a municipal corporation, property owners must be given prior notice and a hearing before assessment.

■■ A special assessment is, I agree, an exercise of the taxing power which is vested exclusively in the legislature. However, it is a power which may be delegated by the legislature to municipal corporations which are, of course, merely instrumentalities of the state for the better administration of public affairs, Hancock v. City of Muskogee, 250 U.S. 454, 39 S.Ct. 528, 63 L.Ed. 1081, and City of Perry v. David & Younger, supra. Furthermore, when a municipal corporation, acting in a legislative capacity, assesses properties on a mathematical frontage-foot basis in which there is no room for discretion, there is no need for notice and an opportunity to be heard, Hancock v. City of Muskogee, supra, and the holding in Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, does not call for a contrary result. In that case the Supreme Court found that due process required prior notice and a hearing before a city council sitting as a "board of equalization" could apportion the cost of an improvement among the lots to be assessed. The crucial factor was not that a city council was making the assessment but

rather that the assessment involved some exercise of discretion. Where, as here, a municipal corporation is acting in its legislative capacity under authority granted by the Legislature, the requirements of due process are met, Hancock v. City of Muskogee, supra.

Finally, plaintiffs contend that the assessments are invalid because the sewer and water line installation was not done in accordance with paragraph 10 of the resolution of January 27, 1960. Paragraph 10 provides:

"Sewer and water lines in annexed areas will be installed when 50% or more of the property owners concerned request such installation."

Plaintiffs contend that such a request by 50% of the property owners concerned was a condition precedent to the installation of such sewer and water lines and argue that defendants have failed to demonstrate on the record that such a request had been made prior to the installations in question.

■ However, I conclude that the language in question was not intended to constitute a condition precedent to the installation of such sewer and water lines. In other words, the Court, in my opinion, should not consider action by the City Council as intended to limit its ability to act under its police powers unless the intention to do so is clearly expressed. Here the resolution does not use the word "unless" as is almost universally the case in instances in which petitions are construed as conditions precedent (See City of North Miami Beach v. Knap, Fla.App., 131 So.2d 747). Rather, in the context in which it appears, I am satisfied that such provision was intended merely to be declaratory of the City's undertaking to install sewer and water lines in areas in which 50% of the property owners should request such installations and not a limitation upon the City's power to provide such facilities when and where needed.

On notice, an order may be submitted granting defendants' motion for summary judgment and denying plaintiffs' similar motion.