CITY OF CORAL GABLES v. CORAL GABLES, INC., *et al.*

160 So. 476.
Division B.
Opinion Filed April 5, 1935.

*O. D. Batchelor,* for Appellant;

*Evans, Marshon & Sawyer, Thos. McE. Johnston, E. B. Hope, Shutts & Bowen* and *Joseph F. McPherson,* for Appellees.

TERRELL, J.—The bill of complaint herein was filed by the City of Coral Gables, a municipal corporation, against Coral Gables, Inc., and various other defendants for the purpose of enforcing special assessment liens more specifically described therein. It is alleged in the bill that the city complied with the requirements of its "1925 Charter," Chapters 10418 and 10419, Acts of 1925, in charging the abutting property with the cost of the improvement from which the liens accrued.

Demurrers to the bill were overruled, answer was filed, a special master was appointed who took the testimony and found that the procedure followed by the city in making the assessments was fatally defective and that no valid liens were in consequence acquired by it. He recommended that the bill be dismissed. Exceptions to the master's report were entered and a rereference ordered with the same result. On final hearing the Chancellor sustained the finding of the master and dismissed the bill of complaint. The instant appeal is from the final decree.

Nine questions are argued here but they may be resolved into these queries: (1) Will the courts inquire into the motives of the City Commission in making the assessments; (2) Were the assessments complained of void as against the abutting property; (3) Was the act of the City Commission in making the assessments against the abutting property in violation of Sections Seven and Ten, Article Nine of the Constitution of Florida; and (4) Was the fee allowed

the special master excessive. An estoppel was also raised and argued as to some of the defendants.

In a decision of the foregoing questions there are the essential facts to bear in mind: In 1925 George E. Merrick incorporated Coral Gables Corporation for the purpose of developing the subdivision known as Coral Gables, later the City of Coral Gables. All contracts executed by Coral Gables Corporation for the sale of lots contained a covenant to pave the streets and sidewalks without cost to the purchaser. Soon after the formation of Coral Gables Corporation the City of Coral Gables was created by Chapter 10418, Special Acts of the Legislature of 1925. In the act creating the City of Coral Gables, George E. Merrick, Telfair Knight, Charles F. Baldwin, F. W. Webster, and Edward E. Dammers, all officers or employees of Coral Gables Corporation, were named as City Commissioners of the City of Coral Gables for a period of four years, or until their successors should be elected and qualified, the first election for City Commissioners being designated in the Act to take place on the second Tuesday in June, 1929.

In the summer of 1926 the financial condition of Coral Gables Corporation became such that it could no longer carry on the improvements it was under contract with its lot purchasers to complete. The work of paving its streets and sidewalks had up to this time been done by W. T. Price, Inc.

At its regular meeting, held June 16, 1926, the City Commission of the City of Coral Gables dismissed the matter of the city undertaking to pave the streets and sidewalks that Coral Gables Corporation was under contract to pave. At a subsequent meeting of the City Commission, held June 18, 1926, Coral Gables Corporation made an agreement with the City of Coral Gables to assume all costs of paving and

save abutting property owners harmless from any lien by reason of the issuance of bonds by the city to pay for paving any and all lots it was under contract to pave.

At a meeting of the City Commission of the City of Coral Gables, held June 19, 1926, forty-eight resolutions were adopted providing for the paving of streets and sidewalks affecting approximately 13,000 lots in the city, all of which were under contract to be paved by Coral Gables Corporation. Subsequently contracts were made by the city for the paving and bonds were issued by it to pay the cost, assessing said cost against the abutting property. The contract for the paving was let to W. T. Price, Inc., which had paving contracts with Coral Gables Corporation and made no distinction in work done by it for the city and the corporation.

It is first contended by the appellant that the act of the City Commission in taking over the paving contracts, issuing bonds therefor, and in levying special assessments against the abutting property to pay for them was a legislative act, pursuant to authority conferred on it by its charter and that the good faith of the Commission in doing so cannot be inquired into by the courts.

It is settled that the courts will not inquire into the motives of the Legislature in enacting laws. And by analogy to this rule it is very generally held that the courts cannot inquire into the motives of members of a municipal council for the purpose of determining the validity of ordinances enacted by them. Soon Hing v. Crowley, 113 U. S. 703, 28 L. Ed. 1145; Cramton v. City of Montgomery, 171 Ala. 478, 53 So. 122; Kittinger v. Buffalo Traction Co., 160 N. Y. 377, 54 N. E. 1081; Moore v. Village of Ashton, 36 Idaho 485, 211 Pac. 1082.

While the rule as prescribed in the foregoing cases. is

well recognized we do not understand that the motive of the City Commission in passing the ordinance brought in question is being attacked. We are here urged to determine whether or not the action of the City Commission in assuming the paving contracts as referred to and in levying special assessments to pay for them was a lawful exercise of its taxing power.

Whether in the form of ordinances or resolutions the acts of municipal corporations may be looked into by the courts to determine whether they were legally exercised, or whether the purpose accomplished by them was within the scope of its power, or whether they were in fact consummated through fraud or overreaching. Dillon, *Municipal Corporations* (5th Ed.) Vol. 2, page 914, Section 580; McQuillin, *Municipal Corporations* (2nd Ed.) Vol 4, Section 1520, page 267; Soon Hing v. Crowley, *supra;* Hunter v. Owens, 80 Fla. 812, 86 So. 839; People, *ex rel.,* v. Elgin J. & E. R. Co., 298 Ill. 574, 132 N. E. 204; St. Paul Trust & Savings Bank v. American Clearing Co., 291 Fed. 212, approved in 10 Fed. (2d.) 1017. In the case at bar the inquiry was well within the latter rule.

It is next contended that the assessments complained of were void as against the owners of the abutting property because of failure to comply with the charter provisions in imposing them.

This contention is grounded on the alleged failure of the City Commission to comply with mandatory requirements of its Charter in the following respects: (1) Filing with the city clerk plans and specifications of the work to be done, including the amount to be assessed against each foot of abutting property; (2) Recordation in the Improvement and Assessment Book of the resolution ordering and confirming the local improvement, including the description of

the property to be improved and the cost per front foot; (3) Failure of the Preliminary Assessment Roll to show the names of lot owners or description thereof; (4) Showing by the Preliminary Assessment Roll that the entire cost of the improvement was assumed by Coral Gables Corporation instead of against the abutting property as the City Charter requires; and (5) Failure to comply with the requirements of the City Charter in its requirements as to publication of notice to all interested persons to appear and file objections to the confirmation of the assessment roll.

The general rule is that municipal corporations have no inherent power to levy special assessments and that no such power existed at common law. In order that such assessments be valid and enforceable they must be made pursuant to legislative authority and the method prescribed by the Legislature must be substantially followed. Page and Jones, *Taxation by Assessment,* Section 775, page 1331; Carr v. City of Kissimmee, 80 Fla. 759, 86 So. 699.

To treat all the grounds as above recited in which it is alleged that the assessments against the abutting property fail to square with the rule as thus announced would require a lengthy opinion that would serve no useful purpose. It is sufficient to say that we have examined the provisions of the Charter in respect to each of them and while we would not say that they are all well grounded it is sufficient to say that there is ample showing of failure to comply with mandatory provisions of the Charter in imposing the assessments for which they are infected with fundamental error and are invalid.

Was the contract on the part of the City of Coral Gables to pave the streets and sidewalks and levy the assessments complained of in contravention of Sections 7 and 10 of Article IX of the Constitution of Florida?

Section 7 of Article IX in effect provides that no tax shall be levied for the benefit of any chartered company of the state, nor for paying interest on any bonds issued by such chartered companies or by counties, or by corporations for the above mentioned purpose. In so far as pertinent here Section 10 of Article IX inhibits the Legislature from authorizing any county, city, borough, township, or incorporated district to become a stockholder in any company, association, institution, or individual.

It is admitted that the officers of Coral Gables Corporation and the City of Coral Gables were identical, that Coral Gables Corporation owned and sold and was under contract to pave the sidewalks and streets adjacent to the lots that were paved by the city, and that the city undertook said paving at the suggestion of Coral Gables Corporation when the latter was unable to do so. The agreement of Coral Gables Corporation to hold the lot owners and the city harmless for the cost of the paving is in the record. The Coral Gables Corporation bought all the bonds issued by the city for the paving and the contractor who had been paving for the corporation was given the contract by the city.

In addition to the foregoing facts about which there is no dispute a study of the entire transaction reveals that it was conducted between the city and the corporation primarily as a business enterprise in the interest of the corporation and the city rather than for the benefit of the lot owners. The corporation's resources were exhausted and having the same officers as the city it used the city and its resources as a means to develop its real estate enterprise. We do not imply that in doing this there was at the time any intentional fraud on the part of the corporation or its officers, though such in fact resulted.

The haste with which the entire proceeding was conducted, the fact that it was instigated and pushed by the corporation to help the business interests of the city, and resale of lots, rather than that of the abutting property support this conclusion. The interests of the corporation and the city were by nature inharmonious, yet through the manipulation of interlocking officials the city was employed to further the interest of the corporation.

No principle of law is better settled than that the same person cannot act for himself and at the same time with respect to the same matter as the agent of another whose interests are conflicting. The two positions impose different obligations and their union would at once raise a conflict between interest and duty and, constituted as humanity is, in the majority of cases duty would be overborne in the struggle. March v. Whitmore, 21 Wall (U. S.) 178, 22 L. Ed. 462; San Diego v. San Diego & Los Angeles R. Co., 44 Cal. 106; Lainhart v. Burr, 49 Fla. 315, 38 So. 711. This was the rule at common law; Drake v. Elizabeth, 69 N. J. L. 190, 54 Atl. 248; Stubbs v. Florida State Finance Co. 118 Fla. 450, 159 So. 527.

Under the facts as here exhibited if the city did not loan or pledge its credit to the corporation contrary to Section 10 of Article IX of the Constitution it would be difficult to conceive a state of facts in which it could be done. It would seem that every factor essential to a violation of the constitutional mandate was present. The conduct of the commission cannot be condoned under the guise of a public development. Bailey v. Tampa, 92 Fla. 1030, 111 So. 119; Brumby vy City of Clearwater (Fla.) 149 So. 203; State, *ex rel.* Davis, Atty. Genl., v. Town of Lake Placid,, 109 Fla. 419, 147 So. 468. What we say on this point is limited

38

to the contract and procedure followed: It has not reference to the act attempted to be followed.

The judgment below is accordingly affirmed but such affirmance is without prejudice to the city to proceed under its charter to make a valid assessment, there being ample authority for that purpose.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN, and DAVIS, J. J., concur in the opinion and judgment.