MILDRED SIMPSON, *et vir;* HELEN HOLLINGSWORTH, *et vir;* GEORGE C. MARTIN, JR., unmarried; ETHEL BERRY, *et vir;* RANEY H. MARTIN, *et ux.;* v. CITY OF BROOKSVILLE, successor to the TOWN OF BROOKSVILLE.

188 So. 794.
Division B.
Opinion Filed May 12, 1939.

*Hardee & Martin,* for Appellants;
*Clyde H. Lockhart,* for Appellee.

PER CURIAM.—This appeal brings for review a final decree allowing the City of Brooksville to foreclose a certain special assessment *paving* and *curbing* lien claimed by the City, against property abutting on a city street.

The Town of Brooksville, on September 27, 1917, issued its Certificate of Indebtedness No. 103 (as said Certificate shows under the provisions of an ordinance passed February 12, 1913), against the property described as "2 acres described in Deed Book E, page 223 and in Deed Book 1, page 487, owned by 'G. C. Martin,'" in the principal

amount of $431.82, for its proportion of the cost of "asphaltic pavement and concrete curbing" laid on Fort Dade Avenue, between Saxon Avenue and the East limits of the Town. The Certificate of Indebtedness purported to represent a lien on the property for this proportionate amount of the paving and curbing improvements.

The City of Brooksville, successor to the Town of Brooksville, as owner of said Certificate of Indebtedness, brought its bill of complaint, on December 10, 1936, to foreclose the lien it claimed on the property by virtue of said Certificate of Indebtedness. From the final decree allowing foreclosure of the asserted paving and curbing lien, the defendants took an appeal.

The sole question to be determined here is whether the Town of Brooksville had authority to assess abutting property for its proportionate part of the cost of "asphaltic pavement and concrete curbing," at the time it attempted to do so.

On August 10, 1916, the Town of Brooksville, through its Town Council, passed an ordinance, which was approved August 12, 1916, authorizing the Town Council, among other things, to hard surface with rock or rock base and asphalt surface and to curb where not curbed, Fort Dade Avenue from its intersection with May Avenue eastward to the town limits; the width of the pavement to be 20 feet; the Town of Brooksville to pay 1/3 of the cost, and the remaining 2/3 to be paid by the owners of the property fronting or abutting upon said improved avenue, said 2/3 to be assessed pro rata to each lot or parcel according to the number of lineal feet therein fronting or abutting on each side of said improved avenues; and said assessments to become a lien upon the property.

Both at the time of the adoption of this ordinance and at the time of the issuance of the Certificate of Indebted-

ness, the Town of Brooksville was operating under its Charter, Chapter 6042, Acts of 1909. Section 31 of this Charter Act gave the Town Council power to "open, alter, extend, widen, establish. grade. pave, or otherwise improve, clean and keep in repair any streets, alleys and sidewalks." But the Charter Chapter 6042, Acts of 1909, did not give the Town Council the authority to levy a special assessment against fronting or abutting property to pay for its proportionate part of the cost of the enumerated improvements.

Municipal corporations have no inherent power to levy special assessments; and in order that such assessments be valid and enforceable, they must be made pursuant to legislative authority, and the method prescribed by the Legislature must be substantially followed. See City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476; Carr v. City of Kissimmee, 80 Fla. 759, 86 So. 699.

The Charter Act, Chapter 6042, Acts of 1909, however, provided as follows, in Section 24:

"The council shall have, in addition to the powers given them by this Act, all the powers given to towns under the General Statutes of the State of Florida."

The powers of municipalities at that time, relating to streets, improvements and assessments therefor are found in Sections 1015-1039 General Statutes of 1906. Section 1030 Gen. Stats. 1906, relating to special assessment of real estate benefited, provided as follows:

"At any time within one year after any of the improvements or other work authorized and provided for in the preceding sections is completed, or any park, *street*, highway or other way is laid out, altered, widened, graded, *paved* or discontinued when, in the opinion of the city or town council any real estate, including that a part of which

may have been taken for that purpose, shall receive any benefit and advantage therefrom, beyond the general advantages to all real estate in the city or town where the same is situated, such city or town council may adjudge and determine the value of such benefit and advantage to any such real estate, and *may assess* upon the same a *proportional share* of the *expense* of *laying out, altering, widening, grading* or *discontinuance;* but in no case shall such assessment exceed one-third the amount of such expense, the balance to be borne by the general tax. The city or town council may permit the person or persons liable for said amount to pay the same in installments, to be paid at such time and with such interest (not to exceed six [6] per cent per annum) as it may determine, and may require said persons to issue to it negotiable obligations for said installments, which shall constitute a lien upon the property against which assessment is made." (Emphasis supplied.)

This quoted statute, Section 1030 Gen. Stats. of 1906, was Section 682 of the Revised Statutes of 1892, which was the carrying forward of Section 4 of Chapter 3164, Acts of 1879. The latter mentioned section did not contain the word "pave" found in Secs. 1030 Gen. Stats. of 1906, and in Sec. 682 Revised Statutes of 1892. Although this statute, Sec. 1030 Gen. Stats. of 1906, gave municipalities generally the power to *pave* streets, it did not give them the power to levy any special assessment against property specially benefited by this *paving* to help pay for it. Nor did the statute give municipalities the power to *curb* streets or to levy special assessents therefor against property specially benefited by the *curbing.* None of the Sections of the General Statutes of 1906 relating to the power of municipalities in regard to streets, improvements and assessments therefor, Secs. 1015-1039, Gen. Stats. of

1906, conferred any power on municipalities to levy special assessments against property specially benefited to pay for its proportionate part of the cost of "asphaltic paving and concrete curbing."

The Legislature of 1913 passed 6672, which was "an Act to enlarge the boundaries and the powers of the Municipality of the Town of Brooksville, Florida and making certain provisions therefor." Section 9 of the Act gave the Town Council authority to assess against abutting property 2/3 of the cost of paving, grading and curbing, in proportion to the frontage of such property on said improved street, avenue or highway, 1/3 to be assessed against the property on each side. However, another part of the Act, Section 30, provided that the Act should take effect upon ratification by the affirmative vote of the majority of the votes cast at an election to be held in the Town of Brooksville. Section 31 provided that this election shall be held on or before the second Monday in October, 1913. No record or other competent evidence was introduced showing that this election was ever held, or that if held, it resulted in an affirmative vote in favor of ratification of the Act. Thus, since no proof at all has been adduced on the point, we must assume that the Act was never ratified by the people of Brooksville, and consequently never became effective.

Chapter 6801 was also passed by the Legislature of 1913. It was an Act to validate an ordinance of the Town of Brooksville, adopting the form of all Certificates of Indebtedness, passed February 12, 1913. This Act does not purpose to give the Town of Brooksville any authority to levy special assessments against abutting property to pay for its proportionate part of any paving, curbing or any other improvement made by the municipality.

No legislative authority having been shown to exist, whereby the Town of Brooksville could lawfully levy special assessments for this *paving* and *curbing,* the Certificate of Indebtedness involved herein cannot be enforced as a lien upon the abutting property. Therefore the final decree below should be and it is hereby reversed.

Reversed.

. WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

THOMAS. J., concurs in opinion and judgment.

Justices TERRELL and BUFORD not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.