THOMAS, Justice
(dissenting)'.
The appellant by resolution created a Plighway Improvement District, published a notice that at a designated time “objections would be heard to the confirmation of such resolution,” to quote from the decree, and subsequently improved a certain street described in the resolution and the notice by applying a one-half inch “leveler” course and a one inch surface course. The base of the street and the curbs and gutters were not disturbed. In other words, the city resurfaced the existing street and undertook by the resolution to charge the cost, except for improving the intersections, to the abutting owners.
The judge decided that the notice was insufficient and that the appellant lacked the authority to impose the cost of an improvement of this nature upon the property owners. He appointed a master to ascertain what amounts had been paid by the various owners on the liens that had been filed to secure payment of the assessments, evidently with the view of later ordering the owners reimbursed.
We will detail the reasons for the rulings as we discuss the questions presented in the briefs.
The appellant claims that authority for the procedure was granted by Sec. 56 of the city charter, Chapter 10847, Laws of Florida, Special Acts of 1925, as amended. In that act we find that the city has the power to grade, pave, re-pave, macadamize and rc-macadamize streets and specially assess the cost against adjacent property. Improvements and the eventual assessments are initiated by resolution of the city commission defining the termini and routes and the character of the work proposed.
After adoption of the resolution, plans and specifications for the work showing the estimated cost are prepared by the manager and filed with the city clerk. When these are filed, the clerk is required to publish “once in a daily newspaper of general cir- *121 culatíon” a notice that at a meeting of the commission “on a certain day and hour” objections of interested persons to the confirmation of the resolution will be heard. The notice must contain, though it may be in brief or general terms, the description and location of the improvement and a statement that plans, specifications and estimates have been filed.
So to generate the power vested by the statute, the resolution must be adopted, and to secure due process to those who must pay the cost, or whose property will be responsible for it, the notice defined in the law must be given.
The notice involved in the instant litigation follows:
“All interested will take notice that at a meeting of the City Commission at 9:30 o’clock A.M. December 3rd, 1952, their objections will be heard to the confirmation of Resolution No. 25006, adopted November 19th, 1952 ordering paving improvements or. South Miami Avenue, from S.W. 15th Street Road to 200' more or less south of Alatka Street, designated improvement H-503.
“Plans, specifications and estimate of cost of said improvements are on file in the City Clerk’s office.
■“November 22, 1952. “F. L. Correll
City Clerk.”
When we place side by side the relevant section of the charter and the notice we have fully quoted, it is plain to us that the latter contained all elements required by the statute. It was published once in a newspaper of general circulation, The Miami Herald; it carried the date and hour of the meeting of the city commission at which complaints would be entertained; it contained a brief general description of the location where the improvement would be made; and it included the statement that the plans, specifications and estimates had been filed with the clerk.
The appellees seem to have convinced the circuit court that there were five defects rendering the notice insufficient: (1) failure to mention the place, that is, the city, where the objections would be heard, (2) absence of the name of the city commission which would hear them, (3) omission of the name of the city where the streets lay; (4) want of identity of the signatory; (5) insertion of the notice in the classified section of the Herald.
The law only requires that persons interested be notified that protests will be heard at a meeting of the commission, and that the day and hour the commission will meet for the purpose be shown. No mention is made about naming in the notice the place where the commission would hold the particular meeting.
It seems to us that an interpretation that a property owner who wished to object to the proceeding would not be sufficiently informed to be able to locate a meeting of the commission of the city of Miami would be far-fetched. We have the same view about the complaint that the commission that would hear the complaints was not named. In the description of the street appears the familiar title “South Miami Avenue,” and the notice appeared in The Miami Herald. We apprehend that few citizens of this state and no owners of property in Miami at all, especially on Miami Avenue between S.W. 15th Street and the vicinity of Alatka Street, would be unaware that these titles pertain to that city. We conclude that anyone purchasing an edition of the Herald and reading the notice would be fully conscious of the nature, place and purpose of the meeting.
Our reaction to the next two so-called imperfections, lack of identity of the city and the signer of the notice, is the same for the same reasons.
As for the position in the paper, among the classified advertisements, we simply say that the publication is the test and that there is no requirement that the notice shall appear in any special section of the newspaper. Actually the notice did appear under the caption “Classified Information” but *122 immediately above it was the title “Legal Notices.” We think this position was quite appropriate.
“The purpose of notice under proceedings of this kind is to secure to the owner the opportunity to protect his property from lien of the proposed tax * * * and, in order to be effectual, it should be so full and clear as to disclose to persons of ordinary intelligence in a general way what is proposed and when and where property owners may be heard.” (Italics supplied.) Escott v. City of Miami, 107 Fla. 273, 144 So. 397, 399.
We consider that the notice substantially conformed to the statute and that any protestant was advised when he could appear and where he could get full information about the contemplated work inasmuch as the plans, specifications and estimates were shown to be on file in the clerk’s office and to relate to a certain numbered resolution dealing with improvement of a stated street.
All members of the court agree to the preceding opinion with reference to the sufficiency of the notice but the opinion which follows is that only of Terrell, C. J., Roberts, J., and the writer. Although we three cannot adopt the view that the property owners could ignore the notice and at this late date successfully attack the action of the city, on the ground that due process had not been afforded them, we believe that the property owners can assail the liens on the ground that the city did not have the power to create them under the circumstances.
The chancellor thought that "resurfacing was necessary to keep the street in repair and facilitate the flow of traffic” and that the “work was for the benefit of the general public, and the abutting owners received no special benefit.”
We can understand the potency of an argument that once a street is paved the cost of maintaining it should be borne by the public. Although we cannot agree that keeping a street in good repair is of no special benefit whatever to the property it bounds, we think that the power to maintain and assess the cost to adjacent property must be found in the charter, and in our search we have not discovered that the municipality was granted the power to “resurface” and assess the costs as in the case of original or new construction. There is no doubt that the city could grade, pave and macadamize and it is clear from the use of the prefix “re” that grading, paving and macadamizing could be done again or anew and liens placed on the property to cover the cost. Presumably a street could so deteriorate that it would be necessary to repeat the work that had made it a graded,, paved or macadamized way for the use of vehicles. But we agree with the circuit judge that “surfacing” is not a synonym of the other gerunds used in the act. Definitions of the words “surface” and “surfacing” appear in available dictionaries indicate that they describe a face or covering of a body as distinguished from the other dimensions. To surface, according to one authority, is to make smooth, or put a surface on, such as “surface a road.” Thorndike-Bernhart dictionary. The total application consisted of a coating an inch and a half in thickness and when this work is considered with the nature of a street, it seems to. us that the circuit judge was not illogical in his holding, based on the testimony of experts, that the layers were to make smoother a street worn by traffic, and that the improvement was in effect maintenance as distinguished from construction or reconstruction.
In conclusion we state that the word “resurfaced” was not the choice of the circuit judge. The relevant part of the resolution was that a certain street be “resurfaced1 * * * with approximately J4" leveling course and 1" surface course of asphaltic concrete * * *.” To do the work was. within the power of the city; to assess it against abutting property was without such power.
The city had no inherent right to levy special assessments; such power could have *123 been invested in it only by the legislature. City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476. The power to assess for what was obviously repairs was lacking. The assessments were, therefore, void. The payment of assessments by some of the owners would not operate as an es-toppel because that doctrine is inapplicable when an assessment is void. Gulf View Apartments, Inc., v. City of Venice, 108 Fla. 41, 145 So. 842. We three are convinced that appellees were entitled to the relief they sought and were granted.
Therefore we dissent.
TERRELL, C. J., and ROBERTS, J., concur.