164 So.2d 260 (1964)
CITY OF CORAL GABLES, a municipal corporation, and William O. Tinder, Appellants,
v.
Bernard B. WEKSLER and Beverly Weksler, his wife, Marcus Morris and Helen Morris, his wife, individually and representing a class of persons and taxpayers similarly situated, Appellees.
No. 63-618.
District Court of Appeal of Florida. Third District.
May 26, 1964.
Rehearing Denied June 12, 1964.
Edward L. Semple, City Atty., and Andrew T. Healy, Asst. City Atty., Turner, Hendrick, Fascell & Guilford, Coral Gables, for appellants.
*261 Bernard B. Weksler, Miami, for appellees.
Before BARKDULL, C.J., and HORTON and HENDRY, JJ.
HORTON, Judge.
In 1957, appellant Tinder, as "pro-manager" was employed by the City of Coral Gables as an independent contractor at a rate of $5,252 per year to manage on concession the facilities of a municipal golf course then under lease from the United States government to the city. Thereafter, in 1958, Tinder was made a regular employee of the city at a salary of $5,512 per year with a continuance of the concession rights, out of which rights Tinder paid the city four per cent of gross receipts from all concession facilities except the restaurant for which he paid six per cent. This latter arrangement continued until December, 1962, when the city, through its commission, by resolution authorized the execution of a three-year lease agreement with Tinder of all facilities at the golf course. This lease agreement was executed by Tinder and the city and provided that Tinder was to operate the entire golf course facilities and was to pay the city a stipulated monthly rental, plus a percentage of gross receipts.
Tinder was at all times employed by the city as a pro-manager of the golf facilities in question. The lease agreement executed between him and the city provided that the agreement could not be assigned, nor could any portion of the leased premises be sublet and that in the event Tinder's employment with the city as pro-manager was terminated, his rights under the lease agreement would likewise terminate.
When Tinder and the city entered into the lease agreement aforesaid, the charter of the city contained a "conflict of interest" provision.[1] Likewise there was in effect an ordinance of the city which sought to strengthen, define and expand the so-called "conflict of interest" provisions of the charter.[2]
The appellees are taxpayers of the appellant city who brought this action, questioning *262 the validity of the lease agreement upon the basis of the conflict of interest provisions of the city charter. The appellants answered the complaint and thereafter the appellees moved, with a supporting affidavit, for a summary judgment. The appellants filed opposing affidavits to the motion for summary judgment, whereupon the chancellor entered a summary final decree in which he found that the lease agreement gave the appellant Tinder, a city employee, a financial interest in a contract with the city and was therefore in violation of Section 103 of the charter and null and void. His conclusion that the contract was void is based in part on the holding in the case of City of Coral Gables v. Coral Gables, Inc., 119 Fla. 30, 160 So. 476. As a result of the chancellor's conclusion, the resolution of the appellant city authorizing the execution of the lease agreement as well as the agreement itself was nullified, and the appellant Tinder was permanently enjoined from operating, directly or indirectly, any of the facilities at the golf course of the appellant city. It is from this summary final decree that appellants have prosecuted this appeal.
Although three questions are argued in the briefs of the appellants, we conclude that they boil down to a determination of whether or not the lease agreement entered into between Tinder and the City of Coral Gables was within the prohibition of § 103 of the City Charter.
The appellants contend that since Tinder was not in a position to influence the decisions of the city commission in authorizing the execution of such a contract, it would not follow from the mere fact of his interest that the agreement would fall within the terms of the prohibition of the city charter. On the other hand, the appellees argue that the mere fact that Tinder was an employee of the city and entered into a contract with the city, from which he directly benefitted, was sufficient to render the contract void as against public policy and within the prohibition of the city charter.
We have examined all the cases cited by both parties, together with reference material and other authorities not cited by the parties, and conclude that the contract in question is not one prohibited by § 103 of the city charter. True, Tinder is a city employee and has a direct financial interest in the lease agreement with the city. It is likewise true that as a city employee in 1958 he possessed a direct financial interest in a concession agreement granted him by the city for the operation of the same facilities covered by the lease agreement. In both instances his salary as a city employee was augmented by the returns from the concession rights granted him by the city. However, it has not been alleged or shown that Tinder, as a city employee, was authorized or possessed the authority to enter into a contract on behalf of the city with himself or anyone else. Likewise it is not contended or shown that he influenced in any way the official action that brought about the execution of the contract.
The city charter provision, as well as state statutes,[3] dealing with prohibited transactions with public bodies, are grounded upon the time-honored principle that one cannot serve two masters. In City of Leesburg v. Ware, 113 Fla. 760, 153 So. 87, 90, Mr. Justice Ellis speaking for the court said:
"It may be safely stated, as a sound or accurate standard by which to determine *263 the applicability of the rule, that no phase of private relations shall be contrary to public policy; that when a contract contravenes an established interest of society it is void as against public policy, and for one person to undertake to be the agent for two persons trading at arm's length with one another contravenes an established interest of society." [Emphasis supplied]
In much the same vein is the statement by Mr. Justice Terrell in City of Coral Gables v. Coral Gables, Inc., supra, at page 479 of 160 So.:
"No principle of law is better settled than that the same person cannot act for himself and at the same time with respect to the same matter as the agent of another whose interests are conflicting. The two positions impose different obligations, and their union would at once raise a conflict between interest and duty and, constituted as humanity is, in the majority of cases duty would be overborne in the struggle."
See also Fruchtl v. Foley, Fla. 1956, 84 So.2d 906, 909, and Terry v. Bender, 1956, 143 Cal. App.2d 198, 300 P.2d 119, 125.
The case upon which the chancellor relied (City of Coral Gables v. Coral Gables, Inc., supra) involved officers of a private corporation who were also officials of the City of Coral Gables, and in their position as city officials, voted to use the city's credit to improve certain property owned by the corporation. Obviously they occupied antagonistic positions; that is to say, on the one hand they were officers of a private corporation seeking to improve its worth, while on the other, they were city officials charged with the duty and trust to the tax payers to see that their official actions were in the best interests of the municipality. Truly, it was a classic example of a conflict of interest. The conflict of interest theory is based, as we understand it, on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate. Tinder occupied no such position. Whether it was expedient and financially sound for the city fathers to award such a contract to Tinder is not for us to say. If the contract in question is prohibited by § 103 of the city charter, then it would seem to us to logically follow that any contract between the city and its employees changing the mode of payment or amount of compensation to the employee would also be prohibited. See Raymond v. Bartlett, 1946, 77 Cal. App.2d 283, 175 P.2d 288.
The ordinance[4] implementing the charter provision defines "conflict of interest" as "the having of a direct financial interest of any kind in the outcome of any act taken by a person connected with the operation of the city which will aid or benefit that person." [Emphasis supplied.] Unless the act in his official capacity is one which will benefit the actor personally, either directly or indirectly, it would not appear to be prohibited. The mere act of executing the lease agreement in his own behalf could not in our opinion draw into question the exercise by Tinder of any act of his on behalf of the city. He possessed no authority to act in behalf of the city.
It follows that the decree appealed is reversed and the cause is remanded with directions to dismiss the bill of complaint.
Reversed and remanded with directions.
HENDRY, J., dissents.
NOTES
[1] "Section 103. No member of the Commission nor any officer or employee of the City shall have a financial interest, direct or indirect, in any contract with the City, or be financially interested directly or indirectly in the sale to the City of any land, materials, supplies or services. Any wilful violation of this section shall constitute a malfeasance in office and any officer or employee of the City found guilty thereof shall thereby forfeit his office or position. Any violation of this section with knowledge expressed or implied of the person or corporation contracting with the City shall render the contract voidable by the City Manager or the Commission." [Emphasis supplied.]
[2] Ordinance No. 1214. "WHEREAS, this Commission believes that the confidence and trust of the public in the honesty and integrity of those constituting Government is of paramount importance and feels, too, that while the provisions of the City Charter as now in existence are strong, that those provisions, particularly in certain instances, can be strengthened.

"NOW, THEREFORE, BE IT ORDAINED BY THE COMMISSION OF THE CITY OF CORAL GABLES:
"SECTION 1. That the words "Officer" or "Employee" or "Member" referred to hereinabove includes members of the City Commission, officials of the City Government, employees of the City Government and members of boards or agencies, whether compensated for services or not.
"SECTION 2. For the purposes of this Ordinance, `Conflict of Interest' is hereby defined to be the having of a direct financial interest of any kind in the outcome of any act taken by a person connected with the operation of the City which will aid or benefit that person.
"SECTION 3. That any of such individuals referred to in Section One hereinabove, who have a direct financial interest in any matter or transaction affecting the City Government, shall state the nature of such interest, recordably, at the commencement of such transaction and shall thereafter refrain from all participation therein.
"SECTION 4. Should any such person participate in any such action, that fact alone shall render the matter or transaction voidable by the City Commission.
"SECTION 5. Any wilful violation of this Ordinance shall constitute malfeasance and shall result in the forfeiture of office, appointment, position or employment, including all benefits or rights applicable thereto, after any person so charged has been found guilty by the Trial Board in cases of City employees or by a four-fifths vote of the City Commission in cases of Board appointees or members of the City Commission." [Emphasis supplied.]
[3] §§ 839.07, 839.08, 839.09, 839.10, Fla. Stat., F.S.A.
[4] Footnote 2, supra.