LILES, Judge.
Appellants, plaintiffs in the trial court, brought suit against the City of St. Peters-burg attacking special assessments attempted to be assessed by the City for improvements in Improvement Area No. 3. The improvements consisted of installation of sanitary sewers, street paving, and drainage upon lands owned by appellants. Authority for such improvements is contained in Chapter 15,505, Laws of Florida, 1931, which is Section 19 of the Charter of the City of St. Petersburg.
The first act in initiating special assessments requires the City Council to pass a resolution ordering the improvements, which the City did by resolution of September 20, 1962. The charter then provides as follows:
“(b) Plans and specifications; estimates of cost. Immediately after the passage of said resolution, the city manager shall prepare and file in his office plans and specifications of each improvement ordered thereby and estimates of the cost thereof. There shall be included in the estimates of the cost of such improvements the cost thereof and all incidental expense to be assessed against property benefited thereby. Such plans, specifications and estimates shall be open to the inspection of the public.
“(c) Notice of meeting to hear objections to resolution. The city manager, upon the filing by him of such plans, specifications and estimates, shall publish once in a daily newspaper of general circulation published in the city, a notice stating that at a meeting of the city council on a certain day and hour (not earlier than ten (10) days from the date of such publication), the city council will hear the objections of all interested persons to the confirmation of said resolution. Said notice shall state in brief and general terms a description of the proposed improvements with the location thereof and shall also state that plans, specifications and estimates or cost thereof are on file in the office of the city manager. * * * ” (Emphasis added.)
Appellants urge that the provisions contained in paragraph (b), supra, providing for cost estimates to be on file is mandatory and jurisdictional. The City provided for the public hearing and ran a notice in the paper setting the date for October 18, 1962. The meeting was held according to the notice but no cost estimates were on file and were not filed, in fact, until October 31, some 29 days after the notice stating that they were on file was first published.
We believe the landmark case applicable to special assessments is City of *527 Ft. Myers v. State, 95 Fla. 704, 117 So. 97 (1928), where the Supreme Court held that the charter provisions requiring the same procedure as found in the instant case were material and said:
“ * * * It is further mandatory that the total estimated cost of the improvements as required by section C shall be on file with the city clerk of the city of Ft. Myers at the time said resolution is adopted.”
Therefore, it would appear that the requirement as set forth in the charter must be strictly complied with and any deviation from the requirement is jurisdictional and therefore fatal to the validity of the special assessments.
It is next contended by appellants that the court erred in finding that the assessments levied were valid when the testimony and evidence show that the City Council failed to make a determination that special assessments levied were not in excess of the benefits to the properties assessed as required by the city charter. We have reviewed in minute detail the testimony and evidence contained in the record and are of the opinion that the City Council did not determine that the special assessments levied were not in excess of the benefits to be derived by the property owners. Municipalities have no inherent power to levy assessments and before assessments may become valid they must be made pursuant to the method prescribed by the Legislature. This principle was set forth clearly in City of Coral Gables v. Coral Gables, Inc. (1935), 119 Fla. 30, 160 So. 476. Any deviation from this rule must be resolved against the City’s power to levy special assessments and a material departure from the express authority contained in the charter is fatal to the validity of special assessments. 29 Fla.Jur. Special Assessments, § 3; City of Gainesville v. McCreary (1913), 66 Fla. 507, 63 So. 914; 48 Am.Jur. Special or Local Assessments, § 4. The applicable provision contained in the charter of the City of St. Petersburg is Section 19(i) which reads as follows:
“Section 19(i) Confirmation, etc. of assessment roll by council; filing with city manager. At the time and place stated in such notice the city council shall meet and receive the objections in writing of all interested persons as stated in said notice. Then or thereafter the city council shall either annul, or sustain, or modify in whole or in part the prima facie assessment as indicated on said roll according to the special benefits which the city council decides each lot or parcel has received or will receive on account of such improvement; * * * the city council may thereupon confirm said roll but shall not confirm any assessment in excess of the special benefits to the property assessed, and the assessment so confirmed shall be in proportion to the special benefits.”
This provision, of course, required the City Council to make a determination of the special benefits each lot or parcel has received or will receive because of the improvements. From the testimony of some of the members of the City Council it becomes evident that the resolution passed pursuant to this particular provision was a mere formality and that no determination of benefits was or had been made. Councilman Cox, when questioned on deposition, said that the City Council did not collectively or individually make a determination of benefits to be derived. The same is true of Councilman Jones. Councilman Cox testified as follows:
“Q: I see; now, let’s get back to this paragraph about benefits. Did the City Council determine that the assessments shown on the preliminary rolls were not in excess of the benefits to the property assessed?
“A: No, the City Council, collectively nor individually, did not make this determination.
* * * * * *
*528 “Q: Isn’t it true that they were predicated on the cost of the improvements with a dollar top, rather than any benefits that were to accrue to the property?
“A: Yes.

“Q: I see, now, prior to the Council passing this Resolution confirming a preliminary assessment roll, did you ever see the figures from the Engineer’s Department, or City Management, or anywhere else as to how much the assessment would be levied on a particular parcel or parcels of property?
“A: To the best of my knowledge, no.”
Councilman Jones corroborated the testimony as follows:
“Q: * * * Did you ever, either by yourself, or with another member or members of the Council, find out from the Engineering Department, or from any other source, how much in money terms the assessments would be against a particular parcel or parcels of land in Area #3 Improvement?
“A: In no instance in any area improvement program have I ever — and I don’t believe I have been supplied with information as to individual assessments — .
>}{ # 5fc íjí ‡ jfc
“Q: Mr. Jones, did the City Council, in your recollection, either in an official meeting, or in caucus, ever discuss from a dollar value standpoint the assessments versus the benefits to any particular parcel or parcels of property in the Area #3 improvement project?
“A: I don’t recall Council’s ever dealing in the area of specifics.”
The Supreme Court in City of Ft. Myers v. State, supra, clearly establishes the principle that all procedural steps set out in the charter are mandatory when they said:
“Municipal officers and boards under statutes like the one under review have no more delicate or responsible duty imposed on them than that of appraising benefits and laying assessments for public improvements. The great majority of our people are not only eager, but insistent, in their demands for highways and other improvements that cost them nothing. Public improvements should at all times be dictated by public necessity rather than the agitation of those who have some personal motive to serve, or those who bear little or no part of the expense of the improvement.”
It is next contended by appellants that the assessments were not based upon the special benefits derived but solely on the costs of the improvements. It would appear again from the record and testimony that this is true. There was no evidence before the City Council when they passed the resolution upon which the court based' its order. Likewise, there was an absence of substantial evidence before the court to substantiate specific benefits to be derived by the property owners. However, there was an abundance of testimony as to the cost of the improvements. The Supreme Court in City of Ft. Myers v. State, supra, set forth again very clearly how to determine benefits to be derived from special assessments when they said: *529 yet been devised that is not open to some criticism. None have attained the ideal position of exact equality, hut, if assessing boards would bear in mind that benefits actually accruing to the property improved in addition to those received by the comumnity at large must control both as to benefits prorated and the limit of assessments for cost of improvement, the system employed would be as near the ideal as it is humanly possible to make it. Witman v. City of Reading, 169 Pa. 375, 32 A. 576; Michener v. Philadelphia, 118 Pa. 535, 12 A. 174. For all the record here discloses, the rule as announced in the preceding paragraph was completely ignored. The assessments seem to have been predicated on the cost of the improvement rather than on the amount of benefits prorated, and, if any benefits were determined, they were predicated on assessments rather than actual increase in value to the lands improved. We think it imperative under the applicable statute that there must have been a specific finding of benefits that the assessments made were not in excess of the benefits found, and that any assessment imposed without regard to the benefits found is arbitrary and invalid.”
*528 “Many elements enter into the question of determining and prorating benefits in a case of this kind. They are physical condition, nearness to, or remoteness from residential and business districts, proximity to the water, desirability for residential or commercial purposes, and many others peculiar to the locality where the lands improved are located. No system of appraising benefits or assessing costs has
*529 In conclusion, it appears from the record that the City of St. Petersburg failed to follow the clear language contained in the charter in that there were no costs estimates on file when the public hearing was held as provided for in the charter; that the City Council failed to determine that the assessments were not in excess of the benefits; that cost of the improvements was the only factor considered in arriving at the assessments to be made and that assessments were not based on the benefits to be derived.
For the foregoing reasons, the judgment of the trial court is reversed.
SHANNON, Acting C. J., and KELLY, CLIFTON, M., Associate Judge, concur.