Mr. Herbert Elliott City Attorney City of Tarpon Springs 101 West Court Street Post Office Box 1575 Tarpon Springs, Florida 33589
Dear Mr. Elliott:
This is in response to your request for an opinion on the following questions:
 (1) DOES s 170.01, F.S., AUTHORIZE A FLORIDA MUNICIPALITY TO LEVY SPECIAL ASSESSMENTS UPON CERTAIN STRUCTURES FOR THE PURPOSE OF FINANCING THE PURCHASE OF FIREFIGHTING EQUIPMENT REQUIRED SOLELY FOR THE SPECIAL BENEFIT OF SUCH STRUCTURES?
 (2) DOES s 166.021, F.S., CONSTRUED WITH s 170.21, F.S., AUTHORIZE SUCH SPECIAL ASSESSMENTS?
 (3) MAY A FLORIDA MUNICIPALITY LEVY AN IMPACT FEE UPON SUCH PROPERTIES FOR SUCH PURPOSES UNDER THE RATIONALE OF CONTRACTORS AND BUILDERS ASSN. V. CITY OF DUNEDIN, 329 So.2d 314 (Fla. 1976)?
As your questions are interrelated, they will be answered together.
According to your letter, the City of Tarpon Springs' fire department is capable of fighting any fire with its present equipment and personnel with the exception of those fires occurring in buildings over two stories. There are presently six such structures within the city and approximately forty more such buildings are contemplated for construction pending approval. In order to protect these buildings, the city intends to purchase a ladder truck designed to reach heights greater than the fire department equipment's present maximum height of 35 feet. The City Commission is interested in levying a special assessment on those structures over two stories high for the purpose of financing the purchase of this equipment which you state will be used exclusively for the benefit for such buildings.
As this office noted in AGO 080-87, the taxing power of municipalities is not derived from Art. VIII, s 2(b), State Const.; rather, the origin of such taxing power and the limitations on its exercise are found in Art. VII, ss 1(a) and 9, State Const., as amended, ss 166.201 and 166.211, F.S., and such other general or special laws concerning ad valorem taxes or general laws concerning other taxes as may be enacted by the Legislature. Thus, municipalities possess no home rule power to levy taxes. The decisional law under Art. IX, ss 3 and 5, State Const. 1885, the antecedent and counterpart provisions of Art. VII, ss 1(a) and 9(a), State Const. 1968, establishes that special assessments are levied under the taxing power and are a peculiar species of taxation. See Jackson v. City of Lake Worth,23 So.2d 526 (Fla. 1945) (an assessment for benefit, although not strictly speaking a tax, is a burden levied under the power of taxation); State ex rel. Board of Supervisors of South Florida Conservancy District v. Caldwell, 35 So.2d 642 (Fla. 1948) (special assessment is a peculiar species of taxation); Atlantic Coastline R. Co. v. City of Lakeland, 115 So. 669 (Fla. 1928) (assessment for local improvements is part of system of taxation); Anderson v. City of Ocala, 91 So. 182 (Fla. 1922) (power exerted in imposing and collecting special assessments is the taxing power of the state). Therefore, absent specific statutory authority therefor, no valid special assessments or liens therefor may be imposed by a municipality. See City of Miami v. Brinker, 342 So.2d 115 (3 D.C.A. Fla., 1977) (municipalities have no inherent power to levy special assessments); Snell Isle Homes, Inc. v. City of St. Petersburg, 199 So.2d 525 (2 D.C.A. Fla., 1967); and Simpson v. City of Brooksville, 188 So. 794 (Fla. 1939) (municipal corporations have no inherent power to levy special assessments and in order that such assessments be valid and enforceable, they must be made pursuant to legislative authority and in the manner or method prescribed by the Legislature). Sections 166.201 and166.211, F.S., which relate to a municipality's taxing power, do not empower a municipality to levy special assessments. AGO 080-87.
In your letter your state that the City of Tarpon Springs operates under a special act charter adopted prior to July 1, 1973; you further state that section 37 of the charter provides that Ch.170, F.S., has been adopted by the city as the method of making local improvements. Section 37 of Ch. 21598, 1941, Laws of Florida, relating to the construction and paving of streets and the laying and construction of sewers and other necessary public improvements in streets or parks and the assessment of two thirds of the amount of the costs of such improvements, was repealed by s 1, Ch. 69-1671, Laws of Florida, and Ch. 170, F.S., as amended from time to time, was adopted as the method of making local improvements (subject to approval by the electors). Neither Ch. 21598, 1941, Laws of Florida, nor Ch. 69-1671, Laws of Florida, authorizes the city to levy special assessments for the purposes of financing the purchase of firefighting equipment Chapter 170 continues to authorize municipalities to provide the improvements therein designated and to levy and collect special assessments against benefitted property for the costs of any of the specified improvements.
You inquire as to whether s 170.01, F.S., which authorizes a municipality to levy and collect special assessments for the purpose of making certain local improvements, authorizes the city to levy special assessments on those buildings over two stories for the purpose of financing the firefighting equipment to be used for such structures. Section 170.01 states that a municipality may, by its governing authority, provide for the construction and repair of streets, alleys and sidewalks; order the construction or reconstruction of sewers and drains and of water mains, water laterals and other water distribution facilities; provide for the drainage and reclamation of wet, low or overflowed lands, and provide for offstreet parking, parking garages or similar facilities. The payment of all or any part of the costs of such improvements may be levied and collected as special assessments on the abutting, adjoining, contiguous or other specially benefitted property. Fire protection or the purchase of firefighting equipment, however, is not referred to in s 170.01, F.S., nor does it appear to be within the nature or scope of those local improvements which are mentioned within the statute. Cf. Thayer v. State, 335 So.2d 815 (Fla. 1976) (mention of one thing in statute implies exclusion of another); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952). Section 170.01 does not therefore relate to or otherwise authorize the imposition of special assessments for fire protection or to finance the purchase of firefighting equipment.
You also refer to s 170.21, F.S., which provides that Ch. 170, F.S., shall not repeal any law relating to the subject matter thereof but shall provide an additional, supplemental and alternative method of procedure for the benefit of the municipalities within the state and shall be liberally construed to effectuate its purpose. You inquire as to whether this section, when construed with s 166.021, F.S., authorizes the imposition of a special assessment for the purchase of firefighting equipment. Section 166.021 implements the home rule powers granted to municipalities by Art. VIII, s 2(b), State Const.; however, as previously noted, a municipality's taxing power arises not from Art. VIII, s 2(b), but from Art. VII, ss 1(a) and 9 of the State Constitution. See Art. VII, s 1, State Const., providing that no tax shall be levied except in pursuance of law, and s 9(a) thereof which in pertinent part states that municipalities may `be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes . . . .' Section 1(a) or s 9(a) of Art. VII does not, nor does s 166.021 and s 166.211, F.S., empower a municipality to levy special assessments. AGO 080-87. In addition, as previously stated, Ch. 170 does not relate to the type of local improvement which is the subject of your inquiry, i.e., fire protection and the purchase of firefighting equipment. Accordingly, s 166.021 when construed with s 170.21, does not authorize the imposition of special assessments for the purpose of financing the purchase of firefighting equipment. No other statute authorizing the city to levy and collect such a special assessment for the purpose of financing firefighting equipment has been brought to the attention of this office. In the absence of such specific statutory authorization, I am of the opinion, until judicially or legislatively determined otherwise, that such a special assessment is not authorized by law.
You also inquire as to whether the city may impose an impact fee or user charge on such properties to purchase the equipment under the rationale of the court in Contractors and Builders Association v. City of Dunedin, 329 So.2d 314 (Fla. 1976). See s 166.201, F.S., which states in part that a municipality may raise by user charges or fees, authorized by ordinance, amounts of money which are necessary for the conduct of municipal government. The case involved a municipal ordinance authorizing the imposition of an impact fee for the privilege of connecting to the municipality's water and sewer system. The court held that the imposition of such fees for connection with the utility did not constitute taxation, but rather were more in the nature of service charges. While there are no provisions in Ch. 180, F.S., expressly governing capital acquisition other than through deficit financing, the court noted that Chapter 180 authorized the legislative body of a municipality to establish `just and equitable' rates or charges for water and sewerage. Thus the issue before the court was not whether the municipality could make reasonable charges for water and sewer services but whether the cost of the projected capital improvements could be considered by the municipality in setting these charges. Stating that differential utility rates and charges may be just and equitable, notwithstanding the differential, the court concluded that raising expansion capital by setting connection charges which do not exceed a pro rata share of reasonably anticipated costs of expansion is permissible where expansion is reasonably required, if use of the money collected is limited to meeting the costs of expansion. The case therefore involved the imposition of fees to finance capital improvements to and the expansion of a proprietary utilities system, payable by the users of such an expanded system for the use of such improvements and facilities; it did not involve and does not extend to services rendered in performing governmental duties, such as police and fire protection, owed to the general public. Moreover, while it is not clear from your letter as to how the city intends to levy and collect such a fee, the exaction of an impact fee as a condition for the issuance of a building permit for a purpose extraneous to the enforcement of the city's building code would be impermissible. While s 166.201, F.S., authorizes a municipality, by ordinance, to impose user charges or fees to raise amounts of money which are necessary for the conduct of municipal government, the charges or fees under consideration in the instant inquiry are not imposed for the use of any proprietary city facility or improvements *3450 thereof; rather the fee would be imposed for general fire protection, a duty owed to the general public, and would appear to be a bare charge for a general right to fire protection without relation to use. Cf. City of Miami Beach v. Jacobs, 315 So.2d 227 (3 D.C.A. Fla., 1975). And see AGO 074-55 which concludes that a municipality could not impose a service fee or user charge on tax exempt homes for the aged for providing police and fire protection as such services performed by a municipality pursuant to law in providing police and fire protection are governmental duties owed generally to the public.
Accordingly, I am of the opinion until and unless judicially or legislatively determined otherwise, that in the absence of specific statutory authorization therefor, the City of Tarpon Springs is without the power to levy and collect special assessments on buildings over two stories in height to finance the purchase of firefighting equipment and may not impose user charges or fees on such buildings for providing general fire protection in the performance of a governmental duty owed to the general public.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General