Mr. J.E. Dorman City Manager Post Office Box 399 Destin, Florida 32541
Dear Mr. Dorman:
This is in response to your request on behalf of the Destin City Council for an opinion on substantially the following questions:
 1. IS THE CITY OF DESTIN AUTHORIZED TO IMPOSE AN ANNUAL FEE ON BOAT SLIPS IN DESTIN HARBOR IN ORDER TO RAISE REVENUE FOR HARBOR RESTORATION AND MAINTENANCE?
 2. IS THE CITY OF DESTIN AUTHORIZED TO LEVY AN ANNUAL PRESERVATION FEE AGAINST REAL PROPERTY BASED ON WATERFRONT FOOTAGE IN ORDER TO RAISE REVENUE FOR HARBOR RESTORATION AND MAINTENANCE?
 3. IS THE CITY OF DESTIN AUTHORIZED TO IMPOSE A TAX ON THE SALE OF FUEL AT MARINAS IN THE CITY?
Your inquiry states that the City of Destin, through its Harbor Board, is attempting to restore, preserve and protect for future generations the integrity of the Destin Harbor. You further suggest that, to the extent that boat slips in particular and the development of waterfront property in general have a continuing impact with respect to degradation of water quality in Destin Harbor, it would be most equitable to require the users of boat slips and the owners of waterfront property to bear the financial burden of restoring and maintaining Destin Harbor. Additionally, the Harbor Board believes that all boats using the harbor should share in the cost of such restoration and maintenance pursuant to a per-gallon tax on fuel sold at marinas in the city.
Certain principles of Florida constitutional law are applicable to each of your questions. No tax shall be levied except in pursuance of law. Section 1(a), Art. VII, State Const. The word "law" as used in this section means a statute adopted by both houses of the Legislature. Advisory Opinion to Governor, 22 So.2d 398
(Fla. 1945). Moreover, provisions for municipal home rule do not vitiate the effect of s. 1(a), Art VII. See, City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1 (Fla. 1972). And see, s. 9(a), Art. VII, State Const., providing in pertinent part that "municipalities shall . . . be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes . . . except . . . taxes prohibited by this constitution." (e.s.) A municipality may exercise a taxing power only to the extent to which such power has been specifically granted to it by general law. Belcher Oil Company v. Dade County, 271 So.2d 118 (Fla. 1972). See, AGO's 80-72, 80-34 and 74-379.
QUESTION ONE
The Legislature has by general law authorized certain municipal taxes, fees and charges. See generally, Part III, Ch. 166, F.S. The Legislature has authorized therein ad valorem taxes and public service taxes. See, respectively, ss. 166.211 and 166.231, F.S. Additionally, the Legislature has specifically authorized therein certain types of fees. See, s. 166.201, F.S., providing that
 A municipality may raise, by taxation and licenses authorized by the constitution or general law, or by user charges or fees authorized by ordinance, amounts of money which are necessary for the conduct of municipal government and may enforce their receipt and collection in the manner prescribed by ordinance not inconsistent with law.
I am not aware of any provision of the Constitution or general law which operates to authorize the City of Destin to impose a tax on or require a license for boat slips in Destin Harbor in order to raise revenue for harbor restoration and maintenance, nor have you directed my attention to any such provision. Cf., s. 166.221, F.S., authorizing reasonable business, professional, and occupational regulatory fees commensurate with the cost of the regulatory activity where not preempted by the state or a charter county, and s. 205.042, F.S., authorizing municipal levy of a local occupational license tax. And cf., s. 166.222, F.S., authorizing a schedule of reasonable inspection fees in order to defer the costs of inspection and enforcement of provisions of a municipal building code. In the absence of any other provision of general law authorizing an annual fee on boat slips in Destin Harbor, it would appear that such fee is unauthorized unless it is a user charge or fee pursuant to s. 166.201.
This office has concluded that s. 166.201, F.S., authorizes fees or charges pursuant to ordinance for the use of city facilities by taxpayers or members of the public but does not authorize charges or fees for performance of a governmental duty owed to the public at large. See, AGO's 85-101, 82-9 and 74-55. However, the courts have recognized the authority of a local governing body to impose an "impact fee" requiring new development to pay its "fair share" of the reasonably anticipated cost of expansion of city facilities or construction of capital improvements which is attributable to such new development. Home Builders and Contractors Association of Palm Beach County, Inc. v. Board of County Commissioners of Palm Beach County, 446 So.2d 140 (4 D.C.A.Fla., 1983), pet. for rev. den., 451 So.2d 848 (Fla. 1984), app. dismissed, 105 S.Ct. 376
(U.S. 1984); Hollywood, Inc. v. Broward County, 431 So.2d 606 (4 D.C.A.Fla., 1983), pet. for rev. den., 440 So.2d 352 (Fla. 1983). These cases have applied the test for the validity of locally imposed "impact fees" which was set forth in Contractors and Builders Association of Pinellas County v. City of Dunedin,329 So.2d 314 (Fla. 1976), appeal after remand, 358 So.2d 846
(Fla. 1978), cert. den., 444 U.S. 867 (1979). The Dunedin holding establishes that such "fees" are valid if they meet the following test: (1) New development must require that the present system of public facilities be expanded; (2) the fees imposed on users must be no more than what the local governmental unit would incur in accommodating the new users of the system; *2435 and (3) the fees must be expressly earmarked and spent for the purposes for which they were charged. Moreover, each of the "impact fees" judicially approved in the foregoing cases are one-time fees payable at the time of connection to a public utility system or at the time a permit for new development is procured.
Accordingly, to the extent that the City of Destin proposes an annual fee on both new and existing boat slips to pay for the performance of what would appear to be a governmental duty owed to the public at large, i.e., the restoration and maintenance of Destin Harbor, a natural water body which is not a public facility or system, I am unable to conclude that the city is authorized either by s. 166.201, F.S., or judicial decisions approving the validity of "impact fees" to impose an annual fee on boat slips in Destin Harbor in order to raise revenue for harbor restoration or maintenance. Therefore, in the absence of any other general law authorizing such a fee, I am of the view that such fee is unauthorized.
QUESTION TWO
You have not directed my attention to any statutory provision that would operate to authorize the City of Destin to levy an annual preservation fee against real property based on waterfront footage in order to raise revenue for harbor restoration and maintenance, nor am I aware of such a law. It would not appear that the contemplated preservation fee is such a fee or charge for the use of city facilities as is authorized by s. 166.201, F.S. Rather, such preservation fee would appear to be in the nature of a special assessment. See, AGO's 84-48 and 82-103 (special assessments are charges assessed against the property of some particular locality because of special benefit accruing to such property by expenditure of money collected). Special assessments are levied under the taxing power and are "a peculiar species of taxation." See, AGO 80-87 and cases cited therein. Absent specific statutory authority therefor, special assessments may not be imposed by a municipality. Attorney General Opinions 85-101, 84-48 and 82-9; City of Miami v. Brinker, 342 So.2d 115 (3 D.C.A.Fla., 1977). See also, AGO 80-87 (no municipal home rule power to levy special assessments). Chapter 170, F.S., authorizes the imposition of special assessments for the purpose of making certain enumerated local municipal improvements. Section 170.01(1)(b) and (g), F.S., provides in pertinent part that "[a]ny municipality of this state may . . . [o]rder the construction, reconstruction, repair, renovation, excavation, grading, stabilization, and upgrading of greenbelts, swales, culverts, sanitary sewers, storm sewers, outfalls, canals, primary, secondary, and tertiary drains, water bodies, marshlands, and natural areas, all or part of a comprehensive stormwater management system, including the necessary appurtenances and structures thereto . . . and [p]rovide for the payment of all or any part of the costs of any such improvements by levying and collecting special assessments on the abutting, adjoining, contiguous, or other specially benefited property." (e.s.) Moreover, s. 170.01(2), F.S., further provides that "[s]pecial assessments may be levied only for the purposes enumerated in this section. . . ." (e.s.) Additionally, the authority given municipalities to impose special assessments should be strictly construed. Gainesville v. McCreary, 63 So. 914
(Fla. 1913). See, Snell Isle Homes, Inc. v. City of St. Petersburg,199 So.2d 525 (2 D.C.A.Fla., 1967), cert. den., 204 So.2d 210
(Fla. 1967), holding that any material departure from the express authority conferred is fatal to the validity of the special assessment. In AGO 84-48, this office concluded that a municipality was authorized by Ch. 170, F.S., to impose special assessments by resolution upon specially benefitted property of the homeowners of a subdivision to pay a prorata share of the costs of maintaining a drainage retention pond and its appurtenances or its appurtenant drainageways, provided that the express terms of ss. 170.02, describing the authorized method of prorating assessments, and 170.03, F.S., describing further procedural requirements for declaring and making assessments, were complied with. However, implicit in the conclusion of that opinion was the fact that such retention pond and its appurtenances were "all or part of a comprehensive stormwater management system." To the extent that your inquiry indicates that preserving "the integrity of the Destin Harbor" is the primary goal of the contemplated fee, rather than comprehensive stormwater management for which special assessments are specifically authorized, I am unable to conclude that the provisions of Ch. 170, F.S., or of any other statute of which I am aware or to which my attention has been directed, operate to authorize the City of Destin to levy an annual preservation fee or special assessment against real property based on waterfront footage in order to raise revenue for harbor restoration and maintenance. Thus, I am of the view that such fee is unauthorized.
QUESTION THREE
Section 206.61, F.S., provides as follows:
 No municipality or other political subdivision shall levy or collect any gas tax or other tax measured or computed by the sale, purchase, storage, distribution, use, consumption, or other disposition of motor fuel except such municipalities as are now levying such a tax under authorization of special laws. However, nothing herein shall prevent the levying by municipalities or other political subdivisions of reasonable flat license fees or taxes upon the business of selling gasoline at wholesale or retail. (e.s.)
See, s. 206.01(13), F.S., defining "motor fuel" as used in Part I of Ch. 206, F.S., to mean and include "what is commonly known and sold as gasoline and fuels containing a mixture of gasoline and other products." Cf., s. 206.97, F.S. (s. 206.61 also applicable to taxation of "special fuel" pursuant to Part II of Ch. 206). You have not directed my attention to any special law presently authorizing the City of Destin to impose a tax on the sale of motor fuel at marinas in the city, nor am I aware of such a law. The only general law purporting to authorize a municipal tax on motor fuel of which I am aware is s. 206.605, F.S. However, that statute provides that the tax imposed therein is payable to the Department of Revenue and may be used only for the purposes enumerated in s. 206.605(3), F.S., generally providing for the purchase, construction, reconstruction and maintenance of certain transportation facilities. Thus, not only do I find no authority for the imposition of a tax on the sale of fuel at marinas in the city by the City of Destin, but I find a specific statutory prohibition on the imposition of such a tax. Moreover, it is clear from Ch. 206 that the Legislature intended that the motor fuels therein taxed include fuel sold for use in boats. See, s. 206.64, F.S., providing for a refund of the municipal tax paid pursuant to s. 206.605, F.S., to any person who uses motor fuel for commercial fishing purposes. Accordingly, the City of Destin is prohibited from imposing a tax on the sale of fuel at marinas in the city.
In sum, then, and unless and until legislatively or judicially determined otherwise, it is my opinion that:
 (1) The City of Destin is not authorized by law to impose an annual fee on boat slips in Destin Harbor in order to raise revenue for harbor restoration and maintenance.
 (2) The City of Destin is not authorized by law to levy an annual preservation fee or special assessment against real property based on waterfront footage in order to raise revenue for harbor restoration and maintenance.
 (3) The City of Destin is prohibited from imposing a tax on the sale of fuel at marinas in the city.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General